The State Board of Tax Commissioners *et al. v.* Holliday *et al.*

THE STATE BOARD OF TAX COMMISSIONERS ET AL. *v.*
HOLLIDAY ET AL.

[No. 18,308.    Filed Jan. 12, 1898.    Rehearing denied April 5, 1898.]

TAXATION.—*Legislature Selects Subjects for Taxation.—Property Not Taxable.*—It is a legislative power to select the subjects for taxation, and the constitution imposes the duty and limitation upon the legislature of providing by law regulations or methods for a just valuation of all property, both real and personal, and where the legislature does not prescribe such regulation as to any particular species of property, such property cannot be taxed.

STATUTORY CONSTRUCTION.—*Intention of Legislature.*—In order to ascertain the intention of the legislature the court should look to the letter of the statute, to it as a whole, to the circumstances under which it was enacted, to the old law, if any, to the mischief to be remedied, to other statutes, to the rules of the common law, and to the condition of affairs when the statute was enacted.

TAXATION.—*Insurance Policies Not Taxable.*—Paid up non-forfeitable and partly paid up life insurance policies are not subject to taxation, as there is no statute providing any regulation for, or any manner of assessing or valuing such policies.

From the Marion Circuit Court.    *Affirmed.*

*W. A. Ketcham*, Attorney-General, *Smiley N. Chambers, Samuel O. Pickens, Charles W. Moores* and *Silas M. Shepard*, for appellants.

*Albert J. Beveridge, A. G. Smith, C. A. Korbly* and *John A. Finch*, for appellees.

McCABE, J.—This suit was brought by appellees for themselves and on behalf of many other persons, citizens of Indiana, similarly situated, who, it is alleged, are too numerous to be brought before the court, the

object of which was to enjoin the listing and valuing of life insurance policies for taxation, held by the appellees. The defendants filed an answer of general denial only, and the issues thus formed were tried by the court resulting in a finding for the plaintiffs, and upon such finding the court rendered judgment and decree perpetually enjoining the defendants from listing and causing to be listed for taxation paid-up life insurance policies and nonforfeitable and partly paid-up life insurance policies held by appellees, and by each and all of those for whom this suit is brought and prosecuted; the defendants' motion for a new trial having been overruled. From this judgment the defendants have appealed, and assign for error that the complaint does not state facts sufficient to constitute a cause of action, and that the court erred in overruling the defendants' motion for a new trial. The other defendants named in the complaint and included in the decree, in addition to the State Board of Tax Commissioners, are the auditor and assessor of Marion county, and the assessors of the several townships of said county. After stating that the appellees hold each a life insurance policy issued by the appellee The New York Life Insurance Co., a minute description of the terms and conditions of the policies so issued by said company is given. Among other things, it is alleged that the New York Life Insurance Company is a corporation organized under the laws of the State of New York, and has been engaged in the life insurance business ever since its organization, and has been engaged for forty years in such business in Indiana. It is also averred that the State Board of Tax Commissioners have caused to be printed in the tax assesment lists to be used by the township assessors in the several townships of this State, under the schedule lists of personal property known as "Credits," items

7 and 8, to be answered by the taxpayers holding life insurance policies, as follows, to wit: "(7) Number of paid-up life insurance policies and their value ——." "(8) Number of Non-forfeitable and partly paid up life insurance policies and their value ——." It is alleged that the said board is threatening and is about to instruct all assessors in the State to assess and value for taxation all such policies, and is about to cause the same to be done, and about to cause criminal prosecutions to be instituted against all refusing to list and value such policies. If the complaint is sufficient, the evidence is also amply sufficient to support the finding; and, on the other hand, if the complaint does not state facts sufficient to constitute a cause of action, the evidence will not support the finding.

The cardinal question lying at the bottom of the whole controversy is whether life insurance policies are legally subject to taxation in this State. The extreme length to which the argument of that question has been extended has made it needlessly burdensome. It is conceded by the appellants that no insurance policies of any description have ever been taxed in this State heretofore. Section 3 of the tax law of 1891 provides that "all property within the jurisdiction of this State, not expressly exempted, shall be subject to taxation." Section 8410, Burns' R. S. 1894. In section 50 of that act, specifying what shall be embraced in the schedule, the last specification is "all other goods, chattels and personal property, not heretofore specifically mentioned, and their value, except property specifically exempt from taxation." These provisions are relied on by the appellants' counsel as including life insurance policies, if they are personal property.

The Attorney-General, on behalf of the State, says:

"Our contention is that such policies are claims and demands in favor of the policy holder against the company issuing such policy, and form the basis of a right of action between them; that they are personal property. It is not necessary for us to cite authorities defining personal property, for the statutes of Indiana have done that, and the definition is in point in this contention." And we are referred to section 1309, Burns' R. S. 1894 (1285, R. S. 1881), containing this provision: "The phrase 'personal property' includes goods, chattels, evidences of debt, and things in action." That definition of personal property, however, by the express terms of the section, which is a section of the code of civil procedure, is made to apply only in the construction of that code. And appellants' learned counsel further extend this line of argument by quoting from *Hutson, Admr.,* v. *Merrifield, Admr.,* 51 Ind., at p. 29, that: "A policy of insurance is a chose in action governed by the same principles applicable to other agreements involving pecuniary obligations." There are many decisions by this court and other courts to the same effect. And hence it is argued that life insurance policies are personal property within the meaning of the tax law of 1891 and the constitution, and therefore the action of the State Board of Tax Commissioners was justified by law. It is admitted, however, that there is no statute authorizing the taxation of life insurance policies by name, and that they were added to the assessment sheets, and inserted in the schedule by the State Board of Tax Commissioners in manner and form as alleged in the complaint. The power of taxation is a sovereign power and belongs exclusively to the legislative department of the government. The power of the legislature over the subject of taxation admits no limitation except where specially imposed

by the constitution itself.   Black on Constitutional Law (2nd ed.), 375; Cooley on Taxation, p. 4.

Appellants' learned counsel also contend that section 1 of article 10 of the State constitution requires the taxing officers to assess for taxation life insurance policies, they being property within the meaning of the tax law and that provision of the constitution. It reads as follows: "The General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only for municipal, educational, literary, scientific, religious or charitable purposes, as may be especially exempted by law."

This constitutional provision does not confer the power of taxation, because that power being sovereign, it is inherent in the legislature.   But the provision is rather a limitation upon the power to tax. It is, therefore, a legislative power to select the subjects for taxation, and this constitutional provision imposes the duty and limitation upon the legislature of providing by law *regulations* or *methods* for a just valuation of all property, both real and personal, for taxation.   Where the legislature has not exercised this power, no other department of the State government can supply the omission; and where no such regulation has been prescribed by law as to any particular species of property, then such property cannot be taxed.   This conclusion may rest either on the inference from such failure to prescribe such regulations that the legislature did not intend to select that particular species of property as a subject for taxation, or regardless of the legislative intent the failure to prescribe such regulations leaves such property unselected as a subject for taxation.   *Riley*

v. *Western Union Tel. Co.*, 47 Ind. 511; *Senour* v. *Ruth*, 140 Ind. 318; *Hyland, Auditor*, v. *Brazil Block Coal Co.*, 128 Ind. 335.  The statute must not only provide what property shall be taxed, but it must provide methods for the valuation of such property, and clothe some person, officer, or tribunal with power and authority to assess such valuation; and, if the statute contains no such provisions, it will be insufficient to subject such property to taxation.  *Riley* v. *Western Union Tel. Co., supra; Senour* v. *Ruth, supra.*  Accordingly it was held by this court in *Pfaff* v. *Terre Haute, etc., R. R. Co.*, 108 Ind. 144, that real estate belonging to the right of way of the railroad, which had been omitted from the schedule by the State Board of Equalization, could not be placed upon the duplicate by the county auditor as omitted property, for the reason that the statute conferred the power and authority exclusively on such board to value or assess said property for taxation; and that the act of the county auditor in assessing the same was without authority of law, and void.  And it is settled in this State that taxes cannot be imposed or collected except in the mode prescribed by law.  *State, ex rel.*, v. *Illyes*, 87 Ind. 405; *Hamilton* v. *Amsden*, 88 Ind. 304.  But it is, in effect, contended by the learned counsel for appellants that life insurance policies being personal property the township assessors are clothed with power and authority to assess and value them for taxation by the statute.  To this contention the appellees' counsel interpose two objections, namely: 1st. That assuming that such policies are personal property of such a nature as to fall within the literal terms of the tax law above quoted, yet that the legislature has provided no regulations for the valuation of such policies; and in the absence of such regulations the State Board of Tax Commissioners cannot, as appellees

contend, usurp the functions of the legislature, and discharge the duties enjoined upon it by the constitution to "prescribe such regulations as shall secure a just valuation of all property." 2nd. That the legislature did not intend to include life insurance policies in the language above quoted, "all property within this State" or the words "all other goods, chattels and personal property," or in section 53, providing the form of the schedule, by the words "credits," "demands and claims."

As to the first objection to appellants' contention, we note that the statute makes annuities and royalties subject to taxation, and provides a regulation for the valuation of them for taxation, thus: "In making the valuation, annuities and royalties shall be valued at their present cash value." In the absence of this regulation annuities would only be taxable on the annual installments that were due and payable, and the bond itself would not be taxable. *State* v. *Cornel,* 31 N. J. L. 374. There are many other regulations as to the method of valuation of certain classes of property. The difficulty arising out of the absence of any statutory regulation for the just valuation of such property as life insurance policies seems to have been keenly appreciated by the State Board of Tax Commissioners, and so they attempted to supply the omission by the following order: "Instructions to County Assessors. Office of State Board of Tax Commmissioners. Indianapolis, Ind., May 19th, 1897. The following tables, based upon the combined experience of actuary's tables, have been prepared for your guidance in arriving at the taxable value of insurance policies. The tables are based upon policies for the sum of $1,000.00—the computations being made at the universally recognized rate of four per cent. By reference to, and a careful study of the tables and the

explanatory notes following, you will be enabled to, at least, closely approximate the taxable value of all policies you come in contact with.   You are instructed that, in the opinion of this board, as well as the law department of the State, all the forms of insurance policies herein given are liable to assessment and taxation at their actual surrender cash value.   You are instructed and urged to look closely after all holders of such policies, and see that they are returned for taxation.   Vigilance on your part in this, as well as in other matters, will greatly increase the taxable values of the State, and will result in a more equitable distribution of the burdens of the government."   And then follows a long list of tables, with instructions and explanations, furnishing regulations for the valuation of life insurance policies, making quite a good sized pamphlet, and at the end it is signed by members of the State Board of Tax Commissioners.   The act of 1872 providing for taxation generally, provided that "all real property within this State, and all personal property owned by persons residing in this State, whether it is in or out of this State, and personal property within this State * * * shall be subject to taxation."   By the 5th section of that act the terms "personal estate" and "personal property" are made to include, amongst other things, "all bonds or stocks, whether of bodies politic or corporate;" and "the shares of stock of incorporated companies and associations organized under the law of this State or the United States." Acts 1872, p. 57.   By the 4th subdivision of section 12 of that act, in relation to the valuation of personal property, provision is made for the valuation of the capital stock of all companies and associations then or thereafter created under the laws of this State, by the State Board of Equalization.   Sections 84 and 85

of that act provided for the valuation whereby telegraph lines in this State used by any person, company, or corporation should be taxed. The capital stock and tangible property were to be reported to the Auditor of State, and under the regulations therein provided the State Board of Equalization was required to assess the capital stock "in manner hereinafter provided." The State Board of Equalization assessed the capital stock of the Western Union Telegraph Company having telegraph lines in this State. That company sued to enjoin the collection of the tax levied and assessed against its property, resulting in a judgment enjoining the treasurer against the collection of the tax, which judgment, on appeal to this court, was affirmed. *Riley* v. *Western Union Tel. Co., supra.* It appeared from the complaint in that case that the plaintiff was a foreign corporation, existing under the laws of New York, and not under the law of the State of Indiana. That its capital stock was about $40,000,000.00. That its property in this State was of the aggregate value of more than $150,000.00, and it had 8,628 miles of telegraph lines in this State, and that the State Board of Equalization, assuming that $800,000.00 was the fair proportion for the State of the capital stock of the company, ordered an assessment upon that amount, less the tangible property of the company in this State. It was there said by Worden, J., speaking for the court, that: "If the taxes were assessed without authority of law, there can be no doubt, so far as the law of Indiana is concerned, that an action will lie to enjoin their collection. * * * Can the capital stock of a telegraph company, organized and existing under the laws of another state, and not under any law of this State, and doing business here only on the principle of comity, be taxed to the corporation in this State under

any existing law of the State?    The question is not
one of power, but whether such power, assuming it to
exist, has been exercised by the legislature.    *    *    *
But neither section 12 nor 85, nor, indeed, any other
section of the statute    *    *    *    contains any provi-
sion in relation to the manner of assessing the stock
of foreign corporations.    *    *    *    Thus there would
seem to be no provision made for the manner of
assessing the stock of foreign corporations; and this
would seem to be a pretty strong reason for inferring
that the legislature did not intend by sections 84 and
85 to assess the capital stock of foreign telegraph
companies.    *    *    *    The language of section 84,
taken by itself, is broad enough to cover foreign as
well as domestic telegraph companies; but as sec-
tion 85, which authorizes the assessment, refers to
some subsequent part of the statute for the manner
of the assessment, and as there is no provision what-
ever in relation to the manner of assessing, by the
board of equalization, the capital stock of foreign,
but only domestic corporations, we are of opinion
that the legislature did not intend by sections 84
and 85, to assess the capital stock of foreign, but
only domestic telegraph companies."    There is much
more ground for claiming that no manner, method, or
regulation has been provided for assessing or valuing
life insurance policies than that no such regulations
had been provided for assessing the capital stock of
foreign telegraph companies with lines and property
in this State.    And yet for the failure to prescribe
such regulations in the tax law of 1872 for the assess-
ment of the capital stock of foreign telegraph com-
panies with lines and property in this State, the as-
sessment of the State Board of Equalization was held
void by this court in the case we have referred to.

And under that statute millions of dollars worth of property of telegraph companies that might have been subjected to taxation by the State of Indiana by proper legislation escaped taxation from the enactment of the tax law of 1872 to the enactment of the law of March 6th, 1893, to provide for the taxation of property of telegraph, express, and sleeping car companies. Buskirk, C. J., concurred in the judgment in the case from which we have just quoted, in a separate opinion, in which he said: "I think the law of March 6, 1893, to provide for the taxation of the stock of the appellee, but failed to provide the necessary machinery to effectuate the purpose proposed. It is very manifest to me that the legislature had no right to impose a tax upon the entire stock of the company, and having failed to provide the proportionate part which should be subject to taxation in this State, the assessment made cannot be sustained."

It is conceded by the appellees that the legislature may, in the exercise of its sovereign power, tax the citizen's interest in a policy of life insurance *ad valorem.* What they contend for is that life insurance policies are of such a nature, and the interest of the person insured, or the beneficiary therein named, is so contingent, so dependent, not only upon the methods and plan of the insurer and his solvency, but upon complicated mathematical calculations to determine the net value of his interest in the reserve fund, that the ordinary methods of listing and valuing property, notes, accounts, shares of stock, and the like, are wholly inadequate to secure a just valuation thereof for taxation. They say the action of the State Board of Tax Commmissioners in compiling and publishing tables to be used by township assessors in valuing the interest of holders or beneficiaries of life

insurance policies affords proof that the methods or regulations for valuing property on the schedule by the taxpayer and township assessor are wholly inadequate to value life insurance policies, or the reserve fund value, or the surrender value thereof, for taxation. This contention we think must prevail. But this holding is strictly confined to the case now before us, and can have no application to ordinary personal property to value which no special regulations are necessary, because section 53 of the tax law provides that "The words 'value,' 'cash value,' 'true value,' or 'valuation,' whenever used in this act, shall be held to mean the usual selling price at the place where the property to which such term or terms are applied shall be at the time of assessment, being the price which could be obtained therefor at private sale, and not at forced or auction sale." Section 8463, Burns' R. S. 1894. There is no such thing as the usual selling or market price of paid up policies of life insurance, or partly paid up and non-forfeitable life insurance policies at the place where such policies shall be. And there is no such thing as a price paid for such policies at forced or auction sale thereof. There might be such a thing as the price which could be obtained for such policies at private sales. But the language we have quoted evidently refers to classes of property which could be exposed to forced and public sales; and therefore it seems unreasonable to suppose that the language quoted was intended to include life insurance policies. But assuming that the statute means the cash value, and is broad enough to embrace life insurance policies, how is such value to be ascertained without some method or regulation prescribed by law whereby it can be so ascertained. That value depends upon so many conditions

and contingencies, such as the financial condition and earnings of the company, a condition a knowledge of which is more than likely not within the reach of the taxing officer or the policy holder, the legal effect of the contract of insurance, and a system of complicated, scientific mathematical calculations, known only to special experts. Certainly if there is any property in all the wide world that calls for and absolutely requires some fixed method or regulation prescribed by law, other than that provided for ordinary and tangible property, by which to secure a just valuation thereof for taxation, none stands more in need of it than life insurance policies.

The second objection urged to appellants' contention is of still greater force. It is that the legislature in the enactment of the present tax law, by the language we have quoted, did not intend to include life insurance policies as subjects of taxation. It may be conceded that it was a duty devolved on the legislature by the constitutional provision quoted to provide for the taxation of all property, both real and personal, except such only for municipal, educational, literary, scientific, religious, or charitable purposes as it might especially exempt by law. Cooley on Taxation (2nd. ed.), 326, says: "It is sometimes a serious question whether a constitutional provision is so far complete and specific in itself as to constitute a sufficient law without assistance from legislation. If it is, it must be considered mandatory and self-executing, and effect must be given to it accordingly. If it is not, it simply lays its mandate upon the legislature, and will fail if that body neglects to pass the necessary laws to carry out the will of the people expressed in it." And the same author in his work on Constitutional Limitations (6th ed.), p. 98, says: "Sometimes the constitution in terms requires

the legislature to enact laws on a particular subject; and here it is obvious that the requirement has only a moral force. The legislature ought to obey it, but the right intended to be given is only assured when the legislation is voluntarily enacted. Illustrations may be found in constitutional provisions requiring the legislature to provide by law uniform and just rules for the assessment and collection of taxes. These lie dormant until the legislation is had. They do not displace the laws previously in force, though the purpose may be manifest to do away with it by the legislation required."

According to these principles, and we think they are correct, the constitutional provision quoted is not self-executing, but requires appropriate legislation to carry it into effect. Neither is there any question of the constitutionality of the tax law for failure to carry out in full the constitutional mandate. If the present tax law includes in the words we have quoted life insurance policies as subjects for taxation, then every tax law that ever was enacted under the present constitution has likewise included them, and yet never before was it supposed that they were so included. Such laws have uniformly been construed and acted upon as if they were not intended to select such policies as subjects for taxation, nor has any attempt ever before been made by any of the officers charged with the duty of executing such laws in this State to assess and value for taxation such policies. This is practically conceded by the learned counsel for the appellees. Black on the Interpretation of Laws, p. 221, says: "The executive and administrative officers of the government are bound to give effect to the laws which regulate their duties and define the sphere of their activities, and, in so doing, they must necessarily put their own construction

upon such acts. When the courts shall have interpreted the laws, these officers are of course bound to accept and abide by their decisions. But in advance of such judicial construction, they must interpret the statutes for themselves, and to the best of their own abilities. * * * But it is a rule, announced by the Supreme Court of the United States, at an early day, and which has since been followed in numerous cases both in the federal and state courts, that the contemporaneous construction of a statute by the officers who have been called upon to carry it into effect, made the basis of their constant and uniform practice for a long period of time, and generally acquiesced in, and not questioned by any suit brought, or any public or private action instituted, to test and settle the construction in the courts, is entitled to great respect, and if the statute is doubtful or ambiguous such practical construction ought to be accepted as in accordance with the true meaning of the law, unless there are very cogent and persuasive reasons for departing from it." To the same effect is Cooley on Const. Limitations (6th ed.), 51-58. And this court, in *Board, etc.,* v. *Bunting,* 111 Ind. 143, as to whether the board of commissioners had authority to build a jail and sheriff's residence, and of the effect of practical construction, and appropriating the language of the supreme court of Illinois, said: "It has always been equal to positive law." *Bruce* v. *Schuyler,* 4 Gilm. 221. And adopting the language of the Supreme Court of Massachusetts, said: "We cannot shake a principle which in practice has so long and so extensively prevailed." *Rogers* v. *Goodwin,* 2 Mass. 475. It was held in that case that, though there was no statute authorizing the county board of commissioners to provide a sheriff's residence, yet, as the statute made it the duty of the county board to pro-

vide and maintain a county jail, and enjoins on the sheriff the duty of keeping the jail, and inasmuch as it had always been the custom of boards of county commissioners to make suitable provision for the sheriff's residence, that this custom had given a construction to the law which could not be disregarded, even if there was doubt as to the meaning of the statute. And in the *Board, etc.,* v. *Gwin, Sheriff,* 136 Ind. 562, 22 L. R. A. 402, after stating that the statute requires the county commissioners to erect a court-house and jail and other public buildings, it is said: "But there is no provision, unless in a special act for the removal of county seats, requiring court-houses or other public buildings to be built at the county seat, yet the universal practice, without a single exception, has been that court-houses and other public buildings connected with the courts or the administration of justice have been erected at the county seat. The act of 1875, providing for the various duties of county boards in relation to the construction of court-houses and other public buildings of the county, makes no provision that court-houses are to be built at the county seat. And yet, in view of the long and uniform practical construction given to these statutes, amounting now to positive law, if the board of commissioners were to attempt to erect a court-house at the expense of the county, at any other place than the county seat, such attempt would be illegal and their acts in furtherance thereof would be void and liable to be enjoined." For a period of over forty years the several tax laws that have been in force in this State, all of them practically the same as the present one, as to the question of whether they embraced life insurance policies as subjects for taxation have been uniformly acted upon and construed by the thousands of officers charged with the duty of executing them,

and by the tens of thousands of taxpayers during that period, as if they did not embrace or include as subjects for taxation policies of life insurance. During all that time no taxing officer ever attempted to assess them for taxation, and no policy holder ever placed any such property on his schedule or list for taxation; and during all that time we had highly penal statutes in force against the failure to list any property subject to taxation; and during all that time each property owner was required by the several tax laws to take and subscribe an oath substantially that his schedule contained a full list of all his personal property subject to taxation; and yet during all that time no taxpayer was ever prosecuted for perjury in failing to place upon his schedule a life insurance policy, though there were thousands of such policy holders among the taxpayers of Indiana. But we are referred by appellants' learned counsel to the case of *Vicksburg, etc., R. R. Co. v. Dennis,* 116 U. S., at p. 670. That case is not of controlling influence, because the question there was not whether the property, a railroad, had been subjected to taxation by the general taxing laws of Louisiana, but the question was whether the property had been exempted from taxation by the provisions of another statute. And it is agreed by counsel on both sides that there is no question of exemption here, and we think they are correct in such agreement. Such a question can only arise on a statute exempting certain specified classes of property from taxation, which, without such special exemption, would fall within the general purview of the taxing law as subject to taxation. It would be a misapplication of language to talk about exempting property from taxation that had not been subject to taxation. So that the force and effect of practical construction in determining the meaning of

a statute are in no way infringed upon by the case referred to by appellants' counsel. Sutherland on Stat. Const., section 218, says: "When the intention can be collected from the statute, words may be modified, altered or supplied so as to obviate any repugnancy or inconsistency with such intention." To the same effect is Endlich on Int. Statutes, section 365; Potter's Dwarris on Statutes, 175-180.

In order to ascertain the intention of the legislature the court should look to the letter of the statute, to it as a whole, to the circumstances under which it was enacted, to the old law, if any, to the mischief to be remedied, to other statutes, to the rules of the common law, and to the condition of affairs when the statute was enacted. *Humphries* v. *Davis*, 100 Ind. 274, 50 Am. Rep. 788; *Middleton* v. *Greeson*, 106 Ind. 18; *Wasson* v. *First National Bank*, 107 Ind. 206; *May* v. *Hoover*, 112 Ind. 455; *Parvin* v. *Wimberg*, 130 Ind. 561, 15 L. R. A. 775. Sutherland on Stat. Const., section 311, says: "The contemporary and subsequent action of the legislature in reference to the subject-matter has been accepted as controlling evidence of the intention of a particular act." Here for a period of over forty years numerous tax laws in effect as broad and comprehensive in the language employed as to the property embraced as the tax law of 1891, had been constantly acted upon and construed by both officers and property owners as not including life insurance policies as subjects for taxation. And the taxing officers and taxpayers of the several states of the Union had construed similar taxing laws in a similar way. Up to that time no attempt had been made, so far as we are advised, by any civilized government, either by legislation, executive, or administrative action to select and treat life insurance policies as property which ought to be taxed and

subject them to taxation. These are the circumstances under which the legislature acted in passing the tax law of 1891. The presumption is that these historical facts were known to the legislature. *Mode* v. *Beasley*, 143 Ind. 306. Sutherland on Stat. Const., section 333, says: "It is presumed that the legislature is acquainted with the law; that it has knowledge of the state of it upon subjects upon which it legislates; that it is informed of previous legislation and the construction it has received."

Therefore, the legislature, with knowledge that all the previous tax laws, practically the same as the tax law it passed in 1891, had been construed by all the officers charged with their execution, as well as by the people affected by them, as not including life insurance policies, it would be most unreasonable to suppose that the legislature, by the use of the words we have quoted from that act, intended to include such policies as subjects for taxation. In the light of all these facts, the intent not so to include them seems apparent, because, as is said by Sutherland on Stat. Const., section 333, "if it were intended to exclude any known construction of a previous statute, the legal presumption is that its terms would be so changed as to effectuate that intention." Nor do we mean by this that in order to subject property to taxation that it shall be specifically named in the statute. Far from it. Much the larger part of personal property is subjected to taxation by legislative action under the general designation of personal property. But we are dealing with the question of interpretation and legislative intent.

But there is still a stronger reason for the conclusion that the legislature did not intend to include life insurance policies by the tax law of 1891 as subjects for taxation, and that is the fact that the act provides

no regulation for their valuation. In that and subsequent statutes the legislature has provided special regulations for the valuation of all those classes of property that are difficult to value, different from that provided for ordinary property, and many of them not as difficult as life insurance policies. For instance, the property of banks and bankers, foreign corporations, such as insurance companies, telegraph companies, telephone companies, express companies, sleeping car companies, railroads, and the like. Special regulations are provided by statute for valuing for taxation the several classes of property above mentioned. And the question arises why did the legislature provide no regulations for the valuation of life insurance policies if it intended to include them by the language we have quoted from the tax law of 1891? In *Riley* v. *Western Union Tel. Co., supra,* it is said: "Thus there would seem to be no provision made for the manner of assessing the stock of foreign corporations, and this would seem to be a pretty strong reason for inferring that the legislature did not intend by sections 84 and 85 to assess the capital stock of foreign telegraph companies."

We therefore conclude that the legislature did not intend to make life insurance policies subjects of taxation, and failing to provide any regulations for, or manner of assessing or valuing such policies for taxation, if they do fall within the literal words of the tax law of 1891, we hold that the act of the State Board of Tax Commissioners, in providing regulations for, and ordering them to be assessed for taxation was without authority of law, and void. It follows that the complaint was sufficient, and the evidence supports the finding, and hence the circuit court did not err in overruling the motion for a new trial. The judgment is affirmed.

### DISSENTING OPINION.

HOWARD, C. J.—Being unable to agree with the majority of the court in the conclusion reached by them in this case, I desire, on account of the importance of the questions involved, to give my reasons for dissenting.

The appellees, in their elaborate and carefully prepared briefs, have advanced many arguments, and cited numerous authorities, in support of propositions which do not seem to be at all in dispute. That the power of the legislature over the subject of taxation is a sovereign power and admits of no limitation except that which is imposed by the constitution; that section 1, article 10, of the constitution which declares that "The General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only, for municipal, educational, literary, scientific, religious, or charitable purposes, as may be specially exempted by law," though mandatory, is not self-executing, but requires legislative action to vitalize its provisions; that it is a legislative power, limited only by the constitution, to select the subjects of taxation and to provide by law rules and regulations to secure a just valuation thereof; that article 5 and section 1, article 14 of the amendments to the constitution of the United States strip the State of all power to lay a tax on either person or property, except by authority of law, under which every person within the jurisdiction of the State shall be entitled to the equal protection of the laws and to the due process of the law; that it has been the policy of the legislature to avoid double taxation wherever possible, and that, while the legisla-

ture might, in the exercise of its plenary taxing power, have imposed double taxation upon any or all taxable property and rights, yet it was not bound to do so; that section 1, article 10, of the constitution of the State makes it the duty of the legislature to prescribe, by law, regulations or methods for the just valuation of all property for taxation, and where the legislature has prescribed such regulations and methods they must be followed; that the instrumentalities of taxation are purely of legislative origin, and property cannot be valued for taxation by any other authority than that which is selected by the statute; that the powers of government are legislative, executive, and judicial, and, except as to *quasi* exercise of these powers, no officer of one department of government can exercise any of the functions of either of the other departments; and that it is presumed that the legislature never intends its enactments to work public inconvenience or private hardships, and, if a statute is doubtful or ambiguous, or fairly open to more than one construction, that construction should be adopted which will avoid such results, all these are propositions to which every one will give his assent, and it is therefore not necessary further to consider what counsel have, with so much learning and ability, advanced in their support.

By clause first of section 120 of the tax law (section 8538, Burns' R. S. 1894), it is made the duty of the State Board of Tax Commissioners, "To prescribe all forms of books and blanks used in the assessment and collection of taxes, and to change such forms when prescribed by law, in case any such changes shall be necessary." And in section 258 of the law (section 8676, Burns' R. S. 1894), it is further provided that, "The State Board of Tax Commissioners is hereby authorized to prepare for the use of assessors a more

complete and perfect form of 'schedule of property' than that set out in section 53 of this act, with a view of securing a full assessment of all the property of the State; and all county auditors are directed to use such form, in preparing blanks for the use of assessors." Acting under the foregoing provisions of the statute, the state board, in preparing the form of schedule for the year 1897, inserted, under the lists of personal property known as credits, the following questions to be answered by taxpayers holding life insurance policies of the kind indicated: "(7) Number of paid-up life insurance policies, and their value ———. (8) Number of non-forfeitable and partly paid-up life insurance policies, and their value ———." The contention of the appellees is that the action of the state board, in including these items in the tax schedule form, was invalid, as a usurpation of legislative authority; while appellants contend that the action of the board was purely administrative, and in compliance with the express authority of the legislature. Appellees do not contend that life insurance policies are not taxable under the constitution, but say that the legislature has never exercised its right to tax them. "We do not contend," say counsel, "that the legislature does not possess the power to list and value life insurance policies, or the surrender value of such policies, by the enactment of a statute selecting them as subjects of taxation, and prescribing regulations for their just valuation; for the legislative power of taxation extends to all classes of property, tangible and intangible, rights and franchises, to persons, to occupations, and to professions; and, while it may be conceded that the legislature possesses the power to tax life insurance policies, we contend that it has never exercised that power." Counsel for appellants, on the other hand, while admitting that the

power to assess and collect taxes, and to establish rules and regulations therefor, is purely a legislative power, subject to the provisions of the constitution; yet contend that the legislature has, in fact, provided for the assessment and collection of taxes on property such as that here in controversy, and has provided all machinery, rules, and regulations therefor. It will be admitted, as contended for by counsel for appellees, citing *Hare* v. *Kennerly*, 83 Ala. 608, 3 South. 683, that "The power of taxation is inherent in the legislative branch of the government, and constitutional provisions relating thereto are not grants of power, but are limitations upon the exercise thereof." Our constitution, however, does not assume to grant authority to the legislature to tax property, but rather assumes that the legislature has power to tax all property. What the constitution does is to command that "The General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation." And this command, as seems to me, the General Assembly has complied with.

It is practically conceded by appellees that the legislature has no power to exempt any property from taxation, save that only for which express provision is made in the constitution itself, namely: property used "for municipal, educational, literary, scientific, religious, or charitable purposes;" and it is not contended that the property here in question belongs to any of these classes. This court has more than once held that no exemptions from taxation, save those so expressly provided for in the fundamental law, can be made by the legislature. By section 7 of the act of December 21, 1872 (Acts 1872, p. 57, 1 Davis' R. S. 1876, 73), the legislature had attempted to exempt from taxation property to the amount of $500.00, owned by widows and others there named having less

than $1,000.00 worth of property; and it was contended that this act was constitutional, as exempting property for charitable purposes; but, in *State* v. *City of Indianapolis*, 69 Ind. 375, and *Warner* v. *Curran*, 75 Ind. 309, this claim was denied, and, in the first of these cases, it was said: "It is the use of the property for the public benefit which will authorize its exemption from taxation by law. To exempt by law private property, owned by a private citizen, and used for a private purpose, on account of the sex or domestic relation of the owner, is a violation of the constitutional principle that taxation shall be uniform and equal on all property, both real and personal." Citing also Cooley on Taxation, 153, that "It is difficult to conceive of an exemption law which selects single individuals or corporations, or single articles of property, and, taking them out of the class to which they belong, makes them the subject of capricious legislative favor. Such favoritism could make no pretense to equality; it would lack the semblance of legitimate tax legislation." So by the act in force March 7, 1887 (Acts 1887, p. 40), substantially re-enacted as section 89 of the tax law (section 8507, Burns' R. S. 1894), provision was made for the taxation of building and loan associations. And under this statute it was contended, in *Deniston* v. *Terry*, 141 Ind. 677, that paid-up or partly paid-up building and loan stock, even where no money had been borrowed upon it, was exempted from taxation. The court, however, disagreed with this contention, holding that a proper construction of that statute did not require that such stock should be exempted from taxation. "If we thought otherwise," is was there said, "we should have to consider the statute itself unconstitutional." It may be observed that, in that case, the property to be taxed, namely, building and loan stock, had not then, either

by the legislature or by the State Board of Tax Commissioners, been required to be listed on the schedule as property to be assessed for taxation.   Yet it was held that the stock was properly listed by the assessor as omitted property, the court saying: "Such shares of stock are of the apparent value of the money paid upon them to the association, and should be taxed accordingly, as any other credits."   But, if the legislature could not, by positive enactment, exempt from taxation any property except that explicitly provided for in the constitution, can it be said that it could accomplish this end by simply failing to make any enactment on the subject?   Can the legislature do by indirection what it could not do directly?   Can it do by silence what it could not do by speaking?   It would be strange, indeed, if that were possible.   However it may be in other jurisdictions, having constitutions different from ours, it must be held under our constitution, that the legislature must do, what it has in fact done, that is, select as the subjects of taxation all property both real and personal, save that only which the constitution itself, for reasons of public policy, provides may be exempted.

Other apparent exceptions found in the statute, and to which counsel refer with so much confidence, as showing the exercise by the legislature of the right to select property for and exempt it from taxation, otherwise than as provided for in the constitution, are in truth but provisions for avoiding double taxation, or for avoiding attempts to tax property not within the jurisdiction of the State.   *Senour* v. *Ruth,* 140 Ind. 318, and other like cases relied upon by counsel, give illustrations of such apparent selections and exemptions, but are no authority for holding that any property but that expressly provided for in the consti-

tution can be exempted from taxation. But it is said that the constitution, though mandatory, is not self-executing, and requires that the legislature should provide for the assessment and taxation of all property, and should prescribe rules and regulations to secure a just valuation for that purpose. This is conceded; but it is manifest from the statute that the legislature has performed this duty, in relation to the property under consideration, as well as all other property. By section 3 of the tax law, section 8410, Burns' R. S. 1894), the legislature has literally obeyed the mandate of the constitution, by selecting for taxation: "All property within the jurisdiction of this state, not expressly exempted." And by section 5 of the same law (section 8412, Burns' R. S. 1894), it has made provision for all the exemptions authorized by the constitution, namely: of property used "for municipal, educational, literary, scientific, or charitable purposes." By thus expressly naming the particular property to be exempted, the General Assembly has, by necessary implication, forbidden the exemption of any other property from taxation. The maxim, *expressio unius exclusio alterius,* could find no apter illustration. *Fletcher* v. *Oliver,* 25 Ark. 289. Indeed, it must be apparent that, had the legislature gone no further than the two sections referred to, in naming the property to be taxed, and had it then made provision for proper assessing and collecting officials, the scheme would have been a sufficient compliance with the constitutional requirements. Even counsel for appellees admit as much, saying: "We do not doubt that if the State desired to comprehend in one broad scheme of taxation all property, both tangible and intangible, it had the power to do so; and under such a scheme the cash surrender value of life insurance policies could have been included among the subjects

of taxation." And this is quite in harmony with what is said by Mr. Cooley (Cooley on Taxation, 272), that "The statute may or may not designate what shall be included by the assessors in their estimate; but the taxable property will be indicated in some form, either by the enumeration of what shall be considered taxable property, or by some general provision that all property shall be taxed except what is specifically exempt." In section 3 of our law, as we have just seen, is found the "general provision that all property shall be taxed" and in section 5 is set out "what is specifically exempt," as authorized by the constitution. But the legislature has gone much further than is thus indicated by Mr. Cooley as sufficient. It has provided for a full set of fiscal officers,— township assessors and deputies; county assessors, auditors, treasurers, and boards of review; and an Auditor and Treasurer of State, besides a State Board of Tax Commissioners. It has also classified all the property of the State, assigning to each of the taxing officials and boards certain defined duties as to each class and kind of property. Single items of property, located in one place, and capable of being valued by one man are assigned, in the first instance, to the township assessor. Certain corporate property, of more complicated character, is referred to the county board of review; and still other property, extending beyond the county limits, or throughout the State, and having varying values, difficult to estimate, and affected by questions concerning matters without as well as within the State, are referred to the State Board of Tax Commissioners. In addition, a complete system of review and appeal is provided for, from the lowest to the highest assessing officers. One standard of valuation is provided for all this property, and to be applied without variation by all the taxing officers

and boards,—the true cash value. Whatever property is to be assessed, and whatever officer or board is appointed to assess it, provision is made in every case for a report or return by the property owner to the assessing officer or board. The assessment is set in motion by the property owner himself. But the officer or board is not bound by any such report, return, or schedule, the same being used as information simply, and as a guide to enable the assessing authority the better to judge of the true cash value of the property. Further provision is made for the listing by the officers and boards of property not fully returned by the owner, or altogether omitted from his schedule. In section 48 of the law (section 8458, Burns' R. S. 1894), it is provided that the property owner shall, on proper blanks, furnish to the assessor "a full and correct description of all the personal property of which such person was the owner on the first day of April of the current year." And, further, that the property owner "shall fix what he deems the true cash value thereof to each item of property for the guidance of such assessor, who shall determine and settle the value of each item, after examination of such statement, and also an examination under oath of the party or of any other person, if he deems it necessary. In determining and settling such valuation, he shall be governed by what is the true cash value, such being the market or usual selling price at the place where the property shall be at the time of its liability to assessment, and, if there is no market value, then the actual value." In this section, the requirement to assess "all property" is repeated. The property owner is directed to return and value, and the assessor is directed to assess at its true cash value, "all the personal property of which such person was the owner on the first day of April of the current

year." We do not need to look to any form of schedule. The direction of the statute is, that "all the personal property" be returned and valued by the owner, and assessed by the assessor. Everything included under the head of personal property must be set down and assessed. Again, in section 50 of the law (Acts 1895, p. 21; section 8460, Burns' R. S. 1894), credits, no less than chattels, are included in personal property, and required to be returned and taxed. And under credits are named "All bonds, notes, mortgages, accounts, demands, claims, and other indebtedness owing to such person." Could any more general words be used than these,—"demands, claims, and other indebtedness?" But this is not the only statute that uses these broad words in classifying personal property. In section 1309, Burns' R. S. 1894 (1285, R. S. 1881), it is said: "The phrase 'personal property' includes goods, chattels, evidences of debt, and things in action." He would, indeed, be a hardy reasoner who should assert, that, although a life insurance policy is a chose in action, a demand or claim which one person has against another; and although the legislature has expressly provided that "all personal property," including by name "demands and claims," should be listed and returned for taxation, yet that a life insurance policy is not taxable for want of legislative authority to tax it. A chose in action, as held in *People* v. *Tioga,* 19 Wend. (N. Y.) 75, comprehends all demands arising on contract. As defined by Burrill Law Dic., "Chose in action is a thing which a man has not the actual possession of, but which he has a right to demand by action, as a debt or demand due from another." See, also, Chit. Pr. 99.

*In re Denny,* 2 Hill (N. Y.) 220, it was said that the word demand was of much broader import than debt, and embraced rights of action beyond those that can

properly be called debts. And in *Gray* v. *Palmer*, 9 Cal. 616, the court said: "The word *claim* is certainly a very broad term, when used in certain connections and in certain matters. Lord Coke truly says that 'the word *demand* is the largest word known to the law, save only, *claim;* and a release of all *demands* discharges *all rights of action.*'" See, also, Co. Litt. 291, and Bouvier Law. Dic. In *Scott* v. *Morris*, 9 Serg. & R. (Pa.) 123, the court said: "The word demand is very comprehensive. It includes everything which the creditors would have become entitled to recover by suit."

In 3 Am. and Eng. Ency. of Law, 235, following Rapalje & Lawrence Law Dic., a chose in action is defined to be "a right of proceeding in a court of law to procure the payment of a sum of money." As examples of choses in action, policies of insurance are there included with promissory notes, bills of exchange, debts, and annuities; and authority for thus classifying policies of insurance as choses in action is found in *Ex parte Ibbetson*, 8 Ch. Div. 519, where it is said: "It is clear beyond all argument that a policy of assurance is a 'thing in action.'" Does it seem reasonable that some such choses in action, as promissory notes, bills of exchange, and debts should be taxable, but that a policy of life insurance, though found in the same class should not be taxable?

It was said by this court in *Hutson* v. *Merrifield*, 51 Ind. 24, 19 Am. Rep. 722, that: "A policy of insurance is a chose in action governed by the same principles applicable to other agreements involving pecuniary obligations. * * * A life policy is an agreement to pay a sum of money at the termination of the life insured. The party holding and owning such a policy, whether on the life of another or on his own life, has a valuable interest in it, which he may

assign, either absolutely or by way of security, and it is assignable like any other chose in action," citing Bliss Life Ins. 506, and many other authorities. This holding was approved, in *Harley* v. *Heist*, 86 Ind. 196, 44 Am. Rep. 285, where Zollars, J., speaking for the court, said: "That the policy was personal property, under our statute, * * * we think there can be no question. In consideration of the payment of the annual premiums, it contained a definite and fixed promise to pay a definite and fixed amount of money, upon the happening of an event, which was uncertain in nothing except the time when it might occur. Such a policy of insurance is a chose in action, governed by the same principles applicable to other agreements involving pecuniary obligations." Again, in *Amick* v. *Butler*, 111 Ind. 578, Judge Mitchell said: "It has never been seriously questioned but that a person may insure his own life, and by the terms of the policy appoint another to receive the money, upon the event of the death of the person whose life is insured; or, having taken a policy, valid in its inception, that he may in good faith assign his interest in such policy, as in any other chose in action." Citing a great number of authorities, and adding: "The cases which hold invalid the taking or assignment of insurance policies turn upon the fact that in each case the transaction was found to be merely colorable, and a scheme to obtain speculative insurance. *Franklin Life Ins. Co.* v. *Hazzard*, 41 Ind. 116." Nor can it be said that a life insurance policy is not a claim or demand, for the reason that no action may be had upon it before the maturity of the policy. A policy of insurance, as we have seen, is a chose in action; and, as held in *Haskell* v. *Blair*, 3 Cush. (Mass.) 534, a chose in action does not necessarily import a present right of action, but simply a right not yet reduced

into possession. As otherwise defined, a chose in action is "a right not reduced to possession," or "the interest in a contract, which in case of nonperformance, can only be reduced into beneficial possession by an action or suit." Chit. Bills (12th Am. ed.), 6. Neither is it true that because no money can be realized from a life insurance policy until its maturity, or the death of the insured, it has therefore no taxable value. A promissory note may not be due for twenty years, or until the death of the maker, yet no one would say that it was therefore without value. And even if a policy could not be sold to pay the delinquent tax assessed upon it, as contended, still, that would not be a reason to show that it is not taxable. In section 48 of the tax law, as we have seen (section 8458, Burns' R. S. 1894), provision is made for the assessment at its actual value of property that has no market value. Then in section 4 of the law (8411, Burns' R. S. 1894), provision is made for the taxation of "goods, chattels, and effects belonging to inhabitants of this State situate without this State." Yet such goods situate without this State could not be sold for the taxes. As said in *Boyer* v. *Jones*, 14 Ind. 354, "the law in question operates upon the owner of the property, he being a resident, and can be enforced against him, although it have no extra-territorial effect." Taxes due on property may be collected by sale of other property of the owner; and, because a chose in action cannot be sold, it by no means follows that it is without value, or that it is not a claim or demand which one may enforce against another, and which may consequently be assessed and taxed under the statute.

Another untenable position assumed by counsel for appellees is, that "all kinds of insurance policies must be taxed or none can be taxed." It is not a

question of the particular name of the claim, demand, or chose in action, but of its present value. The insurance policies here proposed for valuation and taxation are not all policies,—not fire, marine, or other like policies, where the insured can receive nothing except in case of loss; not policies which are merely for indemnity and protection in case of loss, and which, therefore, may never have any money value, as there may never be any loss. Neither is it proposed to tax all life insurance policies, but only those that have so far matured as to have an absolute present money value. Whether other insurance policies are of present value, and therefore taxable, is not a question here for decision. The policies here proposed to be taxed are "paid-up," and also "non-forfeitable and partly paid-up" life insurance policies. It is with these alone that we are concerned. If the companies are solvent, it is too clear for argument that such policies have an absolute present money value. Whether paid-up or partly paid-up, they are non-forfeitable. The reserve fund of the company is pledged to their payment. "This reserve fund," as said in *New York Life Ins. Co.* v. *Statham*, 93 U. S. 24, "has grown out of premiums already paid. It belongs, in one sense, to the assured who has paid them, somewhat as a deposit in a savings bank is said to belong to the person who made the deposit." The circumstance that it may be difficult to determine this value is no more controlling than in case of the valuation of any other credit that the assessor is called upon to value and tax. If it is personal property, a credit, a claim, demand, or chose in action, and has a present money value, it must be assessed. "It is a cardinal rule which should never be forgotten," said Brewer, J., in *Adams Ex. Co.* v. *Ohio State Auditor*, 166 U. S. 185, "that whatever property is worth for the pur-

poses of income and sale, it is also worth for purposes of taxation."

Nor is it any reason why this property should not be taxed that it was not heretofore returned for taxation. The legislature, as we have seen, has provided that all property, not expressly exempted under authority of the constitution, shall be taxed; it has provided, moreover, that all personal property of the class to which this belongs shall be taxed. New forms of property are constantly presenting themselves, and because taxing officers have not had their attention drawn to this or that species of property it by no means follows that such property should not be taxed as soon as observed or discovered. So it was said by the Supreme Court of the United States in *Vicksburg, etc., R. R. Co.* v. *Dennis*, 116 U. S. 665: "The omission of the taxing officers of the State in previous years to assess this property cannot control the duty imposed by law upon their successors, or the power of the legislature, or the legal construction of the statute under which the exemption is claimed." See, also, *Lee* v. *Sturges*, 46 Ohio St. 153, 19 N. E. 560, 2 L. R. A. 556, where it is said: "The fact that this kind of property has not heretofore been listed, affords no reason for continuing to omit it. Laches is not to be imputed to the State." See, further, Black Interpretation of Laws, at p. 223, and *Denney* v. *State*, 144 Ind. 503, at 538, 539, 31 L. R. A. 726.

Counsel for appellees strive to make something out of the case of *Riley* v. *Western Union Tel. Co.*, 47 Ind. 511. The court there simply decided that the capital stock of an interstate telegraph company could not be taxed in Indiana. That is as true under the law of 1891 as it was under the law of 1872. The reason why the telegraph property in this State was not taxable, under the facts stated in the Riley case, is, that the method

there followed did not segregate the property owned by the company in Indiana from that owned by it in other states. Had the State Board of Equalization then proceeded by the method employed by the state board in 1891 for the assessment of the Indiana property of interstate railroad companies, all objections there made to the tax would have vanished, under the decisions of this court, and those of the Supreme Court of the United States in the Backus cases.

Another contention of counsel for appellees, if I understand it, is that it was a usurpation of legislative authority for the State Board of Tax Commissioners to publish certain "rules and regulations by which the value of life insurance policies is to be ascertained by the assessors." But, by clause 9 of section 120 of the tax law (section 8538, Burns' R. S. 1894), the board is not only given the power, but it is made its duty, "To make such rules and regulations as the board shall deem proper to effectually carry out the purposes for which the board is constituted." One of the purposes for which the board is constituted is stated in clause 3 of said section to be, "To see that all assessments of property in this State are made according to law." The mere circumstance that it may be difficult to determine the true cash value of any species of property, is not, of itself, sufficient to show that the legislature must determine by law all the details as to the manner in which the assessment shall be made. Of course, in so far as the legislature has provided a method, that must be pursued. But the details of any method may well be, in great measure, as, indeed, they have been in many cases, left to be worked out by the practical experience of the administrative officers. As to railroad property, for illustration, the state board is given power in section 137 of the law (section 8555, Burns' R. S. 1894), to assess

The State Board of Tax Commissioners *et al. v.* Holliday *et al.*

what is denominated railroad track and rolling stock, at its true cash value. ·To enable the board to do this, the companies are required to make certain returns as to mileage, rolling stock, capital stock, indebtedness, and listed tangible property in the State. No method, however, as to the manner in which the true cash value shall be determined is given. Yet the board went ahead, and formulated the system of railroad assessment now in use. The method adopted may be stated as follows: From the returns made, from evidence given before the board, from standard economic publications, and particularly from a consideration of the bonded indebtedness added to the market value of the capital stock, the whole value of any railroad property, both within and without the State, is determined; and then, for the value in this State, such proportion of the whole value is taken as the mileage of this State bears to the whole mileage. It may be that this system was suggested by sections 79, 80 of the law (sections 8497,8498, Burns' R.S. 1894), in which provision is made for apportioning the value of the whole line in the State among the several counties, townships, cities, and towns; but the fact remains that the statute, while indicating the data and supplying the machinery, had prescribed no method by which such data and machinery should be used in first determining the whole value of any railroad property within the State. The act simply provided that the board should "assess the railroad property, denominated in this act as railroad track and rolling stock, at its true cash value." Yet the method so provided by the board, independent as it was of any direction by the legislature, and although, to reach the end in view, the board went so far as to determine the value of the property without as well as within the State, was expressly approved by this court and

by the Supreme Court of the United States, in *Cleveland, etc., R. W. Co.* v. *Backus,* 133 Ind. 513, 154 U. S. 439, 18 L. R. A. 729, and other Indiana tax cases. Nor was the method so adopted unchallenged in those cases; on the contrary, it was there stoutly contended that the system so adopted provided for the taxation of interstate commerce, and also that it imported extra-state values.  And the courts ruled expressly against those contentions.  If, as counsel well say, the legislature had attempted by law to tax the certificates of stock of railroads and other like companies owning lines partly within and partly without the State, it would have been met at the threshold with the constitutional proposition, that the power of the State legislature over the subjects of taxation stops with the limits of the State.  "Therefore," continue counsel, "to provide a method whereby great corporations doing business in this State could be subjected to the taxing power of the State, the value of the intangible property not within the State was considered in fixing a value to the portion of such intangible property used in connection with the tangible property and contracts with railroad companies within the jurisdiction of the State."  But, as we have seen, it was not the legislature, but the State Board of Tax Commissioners, that adopted this method for the taxation of railroad property.  There is nowhere a hint in the law that "the value of the intangible property not within the State" should be considered in fixing a value to the portion of such intangible property which is within the State.

It may be noted that the method thus, without express legislative direction, adopted by the state board, and so approved by the courts, and extolled by counsel, for the assessment and taxation of railroad property, was afterward followed by the legislature

in providing for the assessment and taxation of telegraph and other like property. Acts 1893, p. 374 (section 8484, Burns' R. S. 1894); *Western Union Tel. Co.* v. *Taggart,* 141 Ind. 281, 163 U. S. 1, 2 Am. and Eng. Corp. Cas. (N. S.) 187, 5 Am. Elec. Cas. 646.

The rules and regulations for the assessment of property here in controversy are quite in harmony with the whole scheme of our laws and practice for the assessment of all property. The legislature has simply provided, in obedience to the constitution, that all property not expressly exempted shall be taxed; that it shall be assessed at its true cash value; that different classes of property shall be assessed by different assessors and assessing boards; and that the State Board of Tax Commissioners shall have general supervision over the whole subject of taxation, and shall frame such rules and regulations as may aid in carrying out the purposes of the law. Certainly, therefore, the board might provide rules by which assessors should be guided in determining the true cash value of life insurance policies. Such rules do not, as counsel intimate, deprive the taxpayer of the right, as in other cases, of first returning and valuing his policy at what he believes to be its true cash value. Neither do they relieve the assessor of his duty to assess the same property at what he believes to be such true cash value; but the rules are a practical guide to enable the assessor to arrive at the sole end had in view by the legislature in framing our tax laws, namely, that this, as every other kind of property, should be assessed at its true cash value.

Another argument made by appellees is to be noticed. Section 67 of the tax law (section 8477, Burns' R. S. 1894), requires that three per cent. of the gross receipts, less losses paid, of all insurance companies not organized under the laws of this State, and doing

business here, shall be paid in to the State treasury semiannually. Counsel contend that it is but fair to conclude that the legislature intended this three per cent. excise tax to be all the taxation to which such insurance companies should be subject. Had this income been exacted of all insurance companies doing business in this State, whether organized here or elsewhere, there might be more reason in the contention. But the three per cent. tax is laid on foreign insurance companies only, and, from the language of the section, it is plain that the tax so imposed is but for the privilege of doing business in the State, and for the protection of the citizens against irresponsible companies organized under the laws of other states and countries. The license fee thus imposed is not a tax upon the value of property, but upon the right to do business in the State; and its exaction from such foreign insurance companies has no bearing whatever upon the interpretation to be given to provisions of the tax law claimed to require that policies of life insurance should be taxed. Neither is there here any question of double taxation, even if it could be claimed, as it cannot, that double taxation were unlawful. Cooley Taxation, 28, 158, 170; 25 Am. and Eng. Ency. of Law, 67, 68.

What counsel have said of the tax schedule does not seem to be of controlling force. While some form of schedule is a convenience for the taxpayer, to enable him to make return of all his property for taxation, yet the schedule is not a necessary part of the tax law, but only a convenience for its due administration. For nearly sixty years after the organization of the State government, or until 1872, under both the old and the new constitution, no schedule of property was set out in the tax law, but the taxing officers furnished their own forms. R. S.

1831, p. 426; 1 R. S. 1852, p. 105; 1 Davis' R. S. 1876, 72.   When the tax law of 1891 was enacted, the legislature undoubtedly perceived that the old form of 1872 was quite imperfect, many items, almost if not quite obsolete, being retained, while new and much more important items of property, resulting from the increased wealth and development of the State, were wholly omitted.   Not only, therefore, was it made the duty of the state board, in section 120 of the law (section 8538, Burns' R. S. 1894), to prescribe all forms to be used by the taxing officers; but in section 258 (section 8676, Burns' R. S. 1894), the board was specifically authorized to prepare a more complete and perfect form of schedule of property, thus restoring to the taxing officers the purely administrative function exercised by them without question for more than half a century.   Under the constitutional power to "prescribe such regulations as shall secure a just valuation for taxation of all property," there is no doubt that any method of taxation prescribed by the legislature must be strictly pursued; but if the legislature commits such an administrative detail as the preparation of a schedule of property to the taxing officers, the compliance of the officers with such direction will not be any assumption of legislative authority, but rather in obedience to such authority. The laws for taxing property are, however, all independent of the form of schedule.   Such form must follow, not make, the law.   All that counsel have said as to the wording of the schedule will consequently have but little to do with the question as to whether paid-up and non-forfeitable life insurance policies are taxable or not.   If those policies are taxable under the law, the board did not violate the law by including them in the schedule; if, however, they are not made taxable by the law, they would not become tax-

able merely because placed in the schedule, even if the schedule were prepared by the legislature itself. What counsel have said of the schedule may, however, be referred to section 50 of the law (section 8460, Burns' R. S. 1894), which section prescribes what the schedule shall contain. Clause 15 of section 50 provides for listing "All other goods, chattels, and personal property, not heretofore specifically mentioned, and their value, except property specifically exempt from taxation." The corresponding, and in fact equivalent, item in the schedule is, "Value of * * * all other property, not specified above, required to be listed." Counsel say: "The important part of this statement is 'all other property, not specified above, required to be listed.' The legislature has left no doubt as to two propositions at least contained in this statement: (1) That it refers to property not specified in the schedule; (2) that it refers to property which is required to be listed by the statute. This is true without construction, because the statute says so. That this general statement was meant to cover property not specified in the schedule which was required to be listed by the law is beyond controversy." Counsel thus admit that there is some property at least, which, although not mentioned in the schedule, is yet required by the statute to be listed for taxation. It will be conceded, as appellees insist, that the general words in section 50, and also in the schedule formed in pursuance thereof, "all other goods," "all other property," following the description and names of particular chattels, will be taken to refer to other property of the same kind already mentioned,—that is, to other chattels. So that, for example, although "agricultural tools, implements and machinery" are mentioned, while such property as harness, and other

stable and livery goods are omitted, yet the latter must be returned for taxation quite as well as the former.   In like manner, while no precious stones but diamonds are mentioned, yet pearls, rubies and all other precious stones, though not mentioned, are taxable quite the same as diamonds.   Gold and silver plate and plated ware are mentioned, but gold and silver spectacles, thimbles, pens, pencils, and rings, though not mentioned, will be taxed as well as plate or plated ware, under the general head of "all other goods, chattels, and.personal property, not heretofore specially mentioned." It is not to be expected that the multitude of forms of personal property can all receive special mention in the law, or even in.the schedule.   It is enough if general classes or like kinds of property are named, in connection with the broad requirement that all property shall be taxed.   And as to chattels, so also as to credits.   Some credits are specifically set out in section 50, and in the schedule, as "bonds, notes, mortgages, accounts."   But these particulars are followed by the general terms, "demands, claims and other indebtedness;" and it could not in reason or justice be said that other demands, claims, or indebtedness than those specifically mentioned should not also be listed, quite the same as bonds, notes or accounts.   By the very rule *ejusdem generis*, so persistently contended for by counsel, it must follow that paid-up or other non-forfeitable life insurance policies must also be listed as credits.   See *State* v. *Daniel* (Wash.), 49 Pac. 243.

Here may be noted what seems rather an ingenious than an ingenuous assumption by counsel for appellees.   In the amendment of 1895 (Acts 1895, p. 24), item third of credits in section 50 of the tax law (section 8460, Burns' R. S. 1894), is made to read:  "All *bona fide* indebtedness owing to such person, which

shall be held to mean notes and accounts only." The word "to" here is so evidently a clerical error for "by" that it would seem that no one could mistake. Item two just preceding, makes provision for listing all indebtedness due to the taxpayer; and counsel would have us believe that the legislature did so foolish a thing in item three as immediately to re-enact what was just enacted in item two. But a moment's investigation will make it apparent that item three was intended to provide for return of all indebtedness due by the property owner, with a view of deducting the latter indebtedness from the former. So it is provided in section 4 of the tax law (section 8411, Burns' R. S. 1894), that "personal property shall include," for the purposes of taxtion, "all indebtedness due to inhabitants of this State above the amounts respectively owed by them;" and a like provision is found in section 114 (Acts 1895, p. 74; section 8532, Burns' R. S. 1894). In the schedule itself, provision is made for deducting *bona fide* indebtedness due by the property owner from indebtedness due to him. The legislature deemed it wise to allow as deductions from credits, only such indebtedness as should be covered by notes and accounts; but it was never intended to define all indebtedness as including only notes and accounts. That would be an absurd and inconsistent meaning to give to the statute. See *Storms* v. *Stevens*, 104 Ind. 46; *Stout* v. *Board, etc.*, 107 Ind. 343; *Mayor, etc.*, v. *Weems*, 5 Ind. 547. The whole superstructure built up by counsel on this clerical error in transcribing the third item of credits from the acts of 1891 to the act of 1895, must therefore tumble to the ground.

To conclude: It is conceded that "paid-up" and "non-forfeitable and partly paid-up" life insurance policies constitute "property." It is conceded that

the constitution requires that all property within the jurisdiction of the State should be taxed; and that it is but equitable and just to those who do pay their taxes that the legislature should carry into effect this provision of the constitution. It is further conceded that it was the solemn duty of the legislature to obey this mandate of the constitution, in respect to this as all other property. The legislature has assumed the performance of this duty, by the enactment of the tax laws of the State. If there were a doubt whether, as to any species of property, the constitutional mandate had been obeyed, the court ought to resolve such doubt so as to construe the law to be that the legislature had performed its duty rather than to hold that it had not. But I think that the case is stronger than this, and that it appears from this opinion that the legislature has, in obedience to its solemn duty, fully provided for the taxation of the property here in controversy. In either case the judgment ought to be reversed.

Monks, J., concurs in the dissenting opinion.