LUTZ, ATTORNEY-GENERAL ET AL. *v.* ARNOLD, ATTORNEY
AND TRUSTEE ET AL.

MUNCIE FINANCE COMPANY *v.* WALSMAN ET AL.

HAMER *v.* WISE, COUNTY ASSESSOR, ET AL.

[Nos. 26,406; 26,343; 26,352. Filed January 29, 1935. Rehearing
denied July 2, 1935.]

484

No. 26,406. *Philip Lutz, Jr.*, Attorney-General, *Edward Barce* and *Joseph W. Hutchinson*, Assistant Attorneys-General, for appellants.

*Roland Obenchain, William Cain, D. M. Shively, Walter R. Arnold, Joseph Hemphling*, and *George L. Rulison*, for appellees.

No. 26,343. *F. Clayton Mansfield*, for appellant.

*Philip Lutz, Jr.*, Attorney-General, *Joseph W. Hutchinson*, Assistant Attorney-General, *William H. Bales, Myron H. Gray, Leo M. Gardner, William C. Harrison*, and *William F. White*, for appellees.

No. 26,352. *Claude Cline, Emmett O. King, Harry Taylor*, and *Emsley W. Johnson*, for appellant.

*Philip Lutz, Jr.*, Attorney-General, *Edward Barce* and *Joseph W. Hutchinson*, Assistant Attorneys-General, *Otto H. Krieg, Myron H. Gray, Leo M. Gardner, William C. Harrison*, and *William F. White*, for appellees.

HUGHES, J.—Causes numbered 26,406, 26,343 and 26,352 relate to chapters 81, 82, and 83 of the Acts of 1933, being the intangible tax law. These causes were consolidated for the purpose of argument and we are consolidating them for the purpose of disposing of all questions raised in different causes. The greater part of all questions presented in the different causes are the same.

In cause No. 26,406, the nature of the action, as stated by appellants, is as follows: This is an action brought originally by Walter R. Arnold as trustee and attorney for A. P. Callahan Company v. Frank N. Nevins as clerk of the St. Joseph Superior Court No. 1, St. Joseph County, Indiana, and Adrian Ross, seeking a declaratory judgment declaring chapter 81 of Acts of 1933, known as the general intangibles tax act of 1933, to be uncon-

stitutional and void. The complaint was predicated upon the allegation that the plaintiff was the owner of a judgment upon a promissory note made to the plaintiff in plaintiff's capacity as attorney and trustee for A. P. Callahan Company and taken in payment of an indebtedness upon contracts of sale of merchandise from A. P. Callahan Company to the defendants Ross in interstate commerce. It was alleged that this judgment was entered in St. Joseph Superior Court on February 26, 1931. That on the 27th day of July, 1932, the plaintiff caused an execution to be issued, which execution was returned unsatisfied at the expiration of 180 days and that on the 30th day of March, 1933, the plaintiff applied for an alias execution and then and there the defendant clerk declared and maintained that no execution could issue upon the judgment to satisfy the judgment or any part thereof until and unless there was paid by way of adhesive stamps in denominations in the aggregate equivalent to five cents on each twenty dollars or fractional part of said judgment in the judgment docket or some other evidence was presented to the clerk to satisfy him that the tax under and by virtue of chapter 81 of the Acts of the General Assembly for the year 1933 had been paid and satisfied in reference to said judgment.

Thereafter, the above named appellants, Philip Zoercher, Albert F. Walsman, and Gaylord S. Morton, as and constituting the State Board of Tax Commissioners, filed their petition to intervene and be made parties defendant, which petition was granted by the court.

Thereafter, the appellees, Thomas and Thomas, as resident freeholders, citizens, and voters of Portage township, St. Joseph county, Indiana, filed their complaint against the above named State Board of Tax Commissioners and others seeking a declaratory judg-

ment. The complaint was based upon the theory that the plaintiffs are resident freeholders, citizens, and voters of said township and county and owners of real estate in said township and county, which tangible personal and real estate are liable to the payment of taxes assessed against said real estate and tangible personal property. This complaint alleges the constitutionality of chapters 81, 82, and 83 of the Acts of the General Assembly of 1933, except that the plaintiffs allege that sections 31 and 32 of chapter 81 and section 9 of chapter 82 and sections 16 and 19 of chapter 83 of the Acts of 1933 are unconstitutional and void.

The appellee Rulison filed his complaint against the State Board of Tax Commissioners and others also seeking declaratory judgment holding chapter 81 of the Acts of the General Assembly of 1933 inapplicable to postal savings deposits and, if applicable, holding that said act is unconstitutional and void.

The appellee Lehman filed an intervening petition asking to be joined as a party in said cause. The petition was granted and was considered as the complaint of said Lehman. This complaint or petition was based upon the general allegation that the plaintiff or petitioner was the owner of real estate and tangible personal property, exclusive of money on deposit in banks and trust companies, subject to assessment for taxation in Portage township, St. Joseph county, Indiana. This petition sought the judgment of the court declaring chapters 81, 82, and 83 unconstitutional and invalid.

The State Board of Tax Commissioners filed demurrers to each of the complaints, which were overruled. Answers and replies were filed, evidence heard, and the court entered judgment declaring all of said laws to be unconstitutional. Motion for new trial overruled.

The errors relied upon for reversal in cause No. 26,406 are as follows: (1) The court erred in overruling the demurrer of said appellants, defendants below, to the complaint of Walter R. Arnold, as attorney and trustee for A. P. Callahan Company; (2) the court erred in overruling the demurrer of said appellants, defendants below, to the amended complaint of the appellees, Thomas and Thomas; (3) the court erred in overruling the demurrer of said appellants, defendants below, to the complaint of the appellee, Rulison; (4) the court erred in overruling the demurrer of said appellants to the complaint of appellee, Lehman; (5) the court erred in overruling the motion of said appellants for a new trial.

In cause No. 26,343 the plaintiff, Muncie Finance Company, brought an action for injunction against the defendants. The plaintiff alleges that it is a corporation and the owner of real and personal property in the city of Muncie, Center township, Delaware county, Indiana, and prays that the defendants, the taxing officials of said township, county, and state, be enjoined and restrained from carrying out, performing, or enforcing any provisions of chapter 81 of the General Assembly of 1933, and that said defendants be ordered and enjoined to assess for taxation and place and cause to be placed on the tax duplicate of the city of Muncie for taxation all of the annual intangibles mentioned in clause 6 of said act. The defendants filed a demurrer to said complaint, which demurrer was sustained by the court. The plaintiff, refusing to plead further, judgment was rendered against plaintiff and plaintiff appealed from said judgment. The assignment of errors is as follows:

1. The court erred in sustaining the demurrer of appellees W. Max Shaffer as county auditor of Delaware

county, Indiana, Joseph T. Meredith as county treasurer of Delaware county, and Pearl C. Hopkins as county assessor of Delaware county to appellant's complaint.

2. The court erred in sustaining the demurrer of Philip Zoercher, Albert F. Walsman, Gaylord S. Morton, as members of the State Board of Tax Commissioners to appellant's complaint.

In cause No. 26,352 the appellant brought an action on April 3, 1933, in the Huntington Circuit Court against the appellees, Claude Wise, as assessor of Huntington county, Ned F. Brown, county auditor, Eldon T. Lawver, county treasurer of said county, and the members of the State Board of Tax Commissioners, alleging that appellant was a resident of the city of Huntington, Huntington county, Indiana, and the owner of real estate and of personal property each of value of more than $500.00 on March 1, 1933. That pursuant to chapter 81 of the General Assembly of 1933 the appellees were attempting to act and proceed in the assessment of property in said Huntington county, in connection with other laws in force in the state providing for the assessment and collection of taxes.

Plaintiff alleges that said act is unconstitutional and prays that each of said appellees be enjoined from carrying out or exercising any of the duties or functions as prescribed by said act with respect to the assessment or collection of any taxes thereunder, as to any property classified by said act as "intangible" or "intangibles"; that said act be declared unconstitutional, illegal, null and void and of no effect, and that appellees and each of them be required and mandated by the court to list for assessment all the property described in said act as intangible property in the same manner and subject to the same rates as other property, including tangible property and real estate.

The appellees filed a demurrer to the complaint. The court sustained the demurrer to the complaint and the appellant refused to plead further and elected to stand on the ruling on the demurrer and judgment was rendered against him in favor of appellees for costs. The assignment of errors is as follows:

1. The court erred in sustaining the demurrer of Claude Wise, county assessor of Huntington county, Indiana, Ned F. Brown, county auditor of Huntington county, Indiana, and of Eldon T. Lawver, county treasurer of Huntington county, Indiana, to appellant's complaint.

2. The court erred in sustaining the demurrer of Albert Walsman, Philip Zoercher, and Gaylord S. Morton, as the State Board of Tax Commissioners, to appellant's complaint.

The first proposition to be considered is the nature of the tax in question. Is the tax imposed under the acts in question an excise or property tax?

An excise tax has been defined to be a tax imposed upon the performance of an act, the engaging in an occupation, or the enjoyment of a privilege, and that every form of tax not imposed directly upon property must constitute an excise if it is a valid tax of any description. 26 R. C. L. 236.

If it is an excise tax it must be so because the tax is imposed against the person because of privileges enjoyed and not against the property of the taxpayer. It cannot be denied that it was intended by the legislature to be an excise tax. This was the evident purpose of the legislature when the act was passed. Acts 1933, ch. 81, p. 523, section 2, of the act provides:

"On and after the passage of this act, every person residing in and/or domiciled in this state, shall pay a tax to the State of Indiana at the rate and in the manner provided in this act, for the right to

exercise any one or more of the following privileges: (a) Signing, executing and issuing intangibles; (b) Selling, assigning, transferring, renewing, removing, consigning, mailing, shipping, trading in and enforcing intangibles; (c) Receiving the income, increase, issues and profits; (d) Having and possessing the right to transmit the same by will and of making gifts thereof and therefrom and of having the right to allow such property to pass to other persons by descent under the intestate laws of the State of Indiana; (e) For the right to have such intangibles separately classified for taxes levied, assessed and collected on account thereof and/or measured thereby."

The declaration in a statute that the tax is of a particular nature, while not conclusive, is very important and must be given consideration in construing the statute. As said in the case of *Flint* v. *Stone Tracy Co.* (1910), 220 U. S. 107, 145, 31 S. Ct. 342:

"While the mere declaration contained in a statute that it shall be regarded as a tax of a particular character does not make it such if it is apparent that it cannot be so designated consistently with the meaning and effect of the act, nevertheless the declaration of the law-making power is entitled to much weight, . . ."

And again in the case of *White Dental Mfg. Co.* v. *Commonwealth* (1912), 212 Mass. 35, 40, 98 N. E. 1056, the court said:

"The conclusion is irresistible that the Legislature intended the financial burden now under discussion to be an excise. It is expressly declared by the terms of the statute to be an excise. The declared purpose of the act is to be accepted as true unless incompatible with its meaning and effect."

So in the instant case it is expressly provided that the tax imposed under the act is for the right to exercise one or more of the privileges as above set out. It does not attempt to impose the tax on the property included in the class defined and it

fixes the rate of the tax and the method of measuring the amount of the tax to be paid by each person subject to the tax. The tax is not payable unless the privileges as set out are exercised and the exercising of the privileges is made the occasion for the tax. The tax imposed may be said to be an excise upon the particular privilege or privileges enumerated in doing certain things. There is a distinct difference between the mere ownership of property and the performance of certain acts of business. And the act in question, and especially section two of the act, relates alone to the performance and doing of certain acts, and unless done there is no tax. The tax is therefore imposed upon the doing of the things described.

An outstanding example of privilege taxes in this state is the inheritance tax law. It is a privilege tax imposed upon the right to take by descent or devise. It is not laid upon the property inherited or devised, but upon the right or privilege to take the property by descent or devise. *Crittenberger* v. *State* (1920), 189 Ind. 411, 127 N. E. 552. Item (d) of said section 2 of the act in question provides for imposition of the tax for the right or privilege of "Having and possessing the right to transmit the same (intangibles) by will and of making gifts thereof and therefrom and of having the right to allow such property to pass to other persons by descent under the intestate laws of the State of Indiana."

If this item were standing alone we do not believe anyone would contend that the tax imposed would not be an excise tax.

In the case of *Gafill* v. *Bracken* (1924), 195 Ind. 551, 145 N. E. 312, it was decided that the act of 1923, which imposed a tax on all the gasoline sold in the state for use in operating automobiles in this state was not a

property tax, but it was the use of gasoline and not gasoline itself that was taxed.

We think the case of *Nicol* v. *Ames* (1898), 173 U. S. 509, 513, 19 S. Ct. 522, is applicable to the instant case. In 1898 the United States Congress passed an act providing:

"Sec. 6. That on and after the first day of July, 1898, there shall be levied, collected and paid, for and respect of the several bonds, debentures or certificate of stock and of indebtedness, and other documents, instruments, matters and things mentioned and described in Schedule A of this Act, or for or in respect of the vellum, parchment or paper upon which such instruments, matters or things, or any of them, shall be written or printed by any person or persons, or party who shall make, sign or issue the same, or for whose use or benefit the same shall be made, signed or issued, the several taxes or sums of money set down in figures against the same, respectively, or otherwise specified or set forth in the said schedule.

Schedule A.—Stamp Taxes (30 Stat. 448-458).

". . . Upon each sale, agreement of sale or agreement to sell any products or merchandise at any exchange or board of trade, or other similar place, either for present or future delivery, for each one hundred dollars in value of said sale or agreement of sale or agreement to sell, one cent, and for each additional one hundred dollars or fractional part thereof in excess of one hundred dollars, one cent: Provided, That on every sale or agreement of sale or agreement to sell as aforesaid, there shall be made and delivered by the seller to the buyer a bill, memorandum, agreement or other evidence of such sale, agreement of sale or agreement to sell, to which there shall be affixed a lawful stamp or stamps in value equal to the amount of the tax on such sale. . . ."

One of the contentions of those opposing the law was that it was not a privilege tax because there was no privilege other than that which every man has to transact his own business in his own house or own office

under such regulations as he may choose to adopt, and such a choice cannot be in any fair use of the term privilege which is subject to taxation. The court held it to be an excise tax and not a property tax. The court said (p. 519):

"The amount of such a tax when imposed in a case like this may be increased or diminished by the extent to which the privilege or facility is used, and it is measured in this act by the value of the property transferred by means of using such privilege or facility, but this does not make the tax a direct one."

We think the alcoholic beverage tax, the automobile license tax, and the gasoline tax of our state, which are excise taxes, are strong arguments to the effect that the tax under consideration is an excise tax. See *Baldwin* v. *State* (1923), 194 Ind. 303, 141 N. E. 343; *Fry* v. *Rosen* (1934), 207 Ind. 409, 189 N. E. 375; *Gafill* v. *Bracken, supra.*

The practical results of the act in question places it in the category of an excise tax, and as said in the case of *Nicol* v. *Ames, supra* (p. 515):

"In deciding upon the validity of a tax with reference to these requirements, no microscopic examination as to the purely economic or theoretical nature of the tax should be indulged in for the purpose of placing it in a category which would invalidate the tax. As a mere abstract, scientific or economical problem, a particular tax might possibly be regarded as a direct tax, when as a practical matter pertaining to the actual operation of the tax it might quite plainly appear to be indirect. Under such circumstances, and while varying and disputable theories might be indulged as to the real nature of the tax, a court would not be justified, for the purpose of invalidating the tax, in placing it in a class different from that to which its practical results would consign it. Taxation is eminently practical, and is in fact brought to every man's door, and for the purpose of deciding upon its va-

lidity a tax should be regarded in its actual, practical results, rather than with reference to those theoretical or abstract ideas whose correctness is the subject of dispute and contradiction among those who are experts in the science of political economy."

It is contended that the act in question does not tax the exercise of any privilege, but the right to exercise the incidents of ownership, and the right to devote the property to the only uses to which it is adapted. We do not assent to this contention. The same contention could be made of the gasoline tax and other like taxes. The only use the owner of an automobile can have is to operate it, but in order to operate it gasoline must be used and the tax on the gasoline is an excise tax. So it may be said that the tax is on the right of the privilege to operate the automobile and not on the right to exercise the incidents of ownership.

We think the tax imposed under the act in question is an excise tax and not a property tax. It has the incidents of an excise tax. We think this construction of the act is compatible with its meaning and effect. The act so declares it to be an excise tax and the declared purpose of the act is to be accepted as true, unless incompatible with its meaning and effect.

It is contended in the Arnold complaint that chapter 81 of the Acts of 1933 violates section 19 of article 4 of the Indiana Constitution. Said section provides:

"Every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."

The title to the act in question is as follows:

"An Act concerning taxation and declaring an emergency."

This title embraces but one subject and that is "taxation," and all parts of the act relate to the same subject. It is the purpose of this section to prevent a combination of non-related subjects. *Sarlls* v. *State ex rel. Trimble* (1929), 201 Ind. 88, 166 N. E. 270. There are no non-related subjects in the act in question. They are all related and germane to the same subject matter. If the details are germane to the general subject matter, then the fact that they are not set out in the title does not make the act invalid. The court, in the case of *Henderson, Aud.* v. *State ex rel. Stout, Sheriff* (1893), 137 Ind. 552, 559, 36 N. E. 257, said:

> "It has been often decided that the title of an act need not go into details, and that it is sufficient if it indicates with reasonable precision and clearness the subject it embraces. Nor is an act invalid because it includes details not mentioned in the title, if the details are germane to the general subject designated in the title. If the subject is properly designated in the title to an act of the General Assembly, any legislation properly connected with the subject may be enacted, though there be no mention in the title, of such details. In other words, it is always necessary to designate in the title of an act the subject of legislation, but it is never necessary to mention the matters properly connected with the subject."

We do not think anyone could be misled by the title of the act for the reason that it does not give a fair notice of its contents. If the title fairly gives such notice, so as to reasonably lead to an inquiry into the body of the bill, it is all that is necessary. It need not amount to an abstract of its contents. *State* v. *Arnold et al.* (1894), 140 Ind. 628, 38 N. E. 820. We think the title of the act is sufficient and does not violate the aforesaid constitutional provision.

Section 1 of article 10 of the Indiana Constitution is not violated by the act in question for the reason that said provision relates to property taxes and not ██ to excise taxes, and we are holding that said act imposes an excise tax and not a property tax. In the case of *Thomasson* v. *State* (1860), 15 Ind. 449, where the question of a liquor license fee was involved, the court held that such a license fee did violate section 1 of article 10 and that said section relates to the general levy alone. And in the case of *Bright* v. *McCullough* (1866), 27 Ind. 223, 232, the court said:

"Indirect taxes, imposed not merely for the purpose of revenue, but in restraint of a particular business or calling, or as a license on particular pursuits, or as a mere police regulation, do not come within the spirit or meaning of the provision of the Constitution referred to."

And in the case of *Kersey* v. *City of Terre Haute* (1903), 161 Ind. 471, 68 N. E. 1027, where an ordinance providing for a vehicle tax was attacked, the court said that section 1 of article 10 related only to property taxes. To the same effect is the holding of the case of *Gafill* v. *Bracken, supra.* Also the same effect is the case of *State Board of Tax Commissioners* v. *Jackson* (1930), 283 U. S. 527, 51 S. Ct. 540, where the chain store tax of Indiana is considered and construed and held not in conflict with section 1 of article 10.

It will be conceded that the power of taxation is a sovereign power and belongs exclusively to the legislative department of government and that the ██ power of the legislature over the subject of taxation admits no limitations except where specifically imposed by the Constitution itself. Cooley on Taxation, p. 4; Black on Constitutional Law (2nd Ed.), 375; *State Board of Tax Comm.* v. *Holliday* (1897), 150 Ind. 216, 49 N. E. 14.

The plan of taxation is with the legislature alone, subject only to constitutional provisions. As said in the case of *Board* v. *Adler* (1922), 77 Ind. App. 296, 297, 133 N. E. 602:

"Taxation is a subject peculiarly within the province of the legislative department of our state government. Subject only to constitutional provisions, the legislature has the exclusive power to devise the plan of taxation; to prescribe the method by which property shall be listed and taxed; to fix the rate for state purposes; to designate the manner in which, and the agencies by whom the rates shall be fixed for counties, townships, and municipal corporations; to designate the officers by whom, the time within which, and the manner in which, the taxes shall be collected; and to say who shall have the custody of the funds and how the funds shall be disbursed."

Cooley, Law of Taxation, p. 127, quotes from the case of *Commonwealth* v. *Savings Bank* (1862), 5 Allen (Mass.) 428, 436, as follows:

". . . perfect equality in the assessment of taxes is unattainable. Approximation to it is all that can be had. Under every system of taxation, however wisely and carefully framed, a disproportionate share of the public burdens will be thrown on certain kinds of property, because they are visible and tangible, while others are of a nature to elude vigilance. It is only where statutes are passed which impose taxes on false and unjust principles, or operate to produce gross inequality, so that they cannot be deemed in any just sense proportional in their effect on those who are to bear public charges, that courts can interpose and arrest the course of legislation by declaring such enactments void."

Having determined that the tax imposed is an excise tax, then under a uniform holding of the courts, the state may classify for the purpose of imposing an excise tax. And as said in the case of *Baldwin* v. *State* (1924), 194 Ind. 303, 307, 141 N. E. 343:

"It is primarily for the legislature to determine the classification and is never a judicial question unless the classification under no circumstances can be viewed as reasonable. When the classification in a law is questioned, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts must be presumed."

In the case of the *State Board of Tax Comm.* v. *Jackson, supra,* the court said (p. 537):

"The power of taxation is fundamental to the very existence of the government of the States. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, business, trades, callings, or occupation. . . . The fact that a statute discriminated in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, . . .

" 'A very wide discretion must be conceded to the legislative power of the State in the classification of trades, callings, businesses or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.' "

It was further said in the Jackson case that (p. 537):

"It is not the function of this Court in cases like the present to consider the propriety or justness of the tax, to seek for the motives or to criticize the public policy which prompted the adoption of the legislation. Our duty is to sustain the classification adopted by the legislature if there are substantial differences between the occupations separately classified. Such differences need not be great."

As to classification, it may be said that the rule is that, while the state is not at liberty to resort to a clas-

sification that is palpably arbitrary, any classification is valid, provided it rests upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. And it is generally admitted and conceded that absolute equality in taxation can never be attained and that that system is best which comes the nearest to it. All that is required to make valid any classification that the legislature may adopt is that it shall be based upon a rational ground—some difference that bears a just relation to the purpose to be served as limited by state and federal Constitutions.

In the case of *Commonwealth* v. *Delaware Div. Canal Co.* (1889), 123 Pa. 594, the court said (p. 620) :

". . . the selection of the subjects, their classification, and the methods of collection are purely legislative matters. When the action of the legislature, with respect to these matters, is not repugnant to the Constitution, it would certainly be a case of the grossest inequality, which would call for the intervention of the courts. . . .

"Absolute equality is of course unattainable; a mere approximate equality is all that can reasonably be expected. . . . Nor is classification necessarily based upon any essential difference in the nature or, indeed, the condition of the various subjects; it may be based as well upon the want of adaptability to the same methods of taxation, or upon the impracticability of applying to the various subjects the same methods, so as to produce just and uniform reasonable results, or it may be based upon well-grounded considerations of public policy."

The State of Indiana is not prohibited from imposing different taxes on tangible and intangible, real and personal property by the federal Constitution, *Bells Gap* v. *Pa.* (1890), 134 U. S. 232, 10 Sup. Ct. 491; and the power of the state to classify under section 23 of article 1 of the Indiana Constitution

must be conceded. *Gafill* v. *Bracken, supra; Crittenberger* v. *State, supra; State Board* v. *Jackson, supra.*

It is contended that the classification as provided for in said act is arbitrary and unreasonable because there is no real or natural reason why banks, trust companies, building and loan companies, and certain other corporations are not taxed under said act. This contention cannot be sustained for the reason that chapters 82 and 83 both have to do with taxation and take care of the situation complained of. Chapters 81, 82, and 83 must be construed together as parts of one body of law and as together expressing the legislative will. These three chapters were enacted by the same legislature and approved on the same day. *Holle* v. *Drudge* (1920), 190 Ind. 520, 129 N. E. 229; *Cummins* v. *Pence* (1909), 174 Ind. 115, 91 N. E. 529. As said in the case of *State ex rel. Baker* v. *Grange* (1928), 200 Ind. 506, 509, 165 N. E. 239:

> "Statutes which relate to the same thing, or to the same subject, person or object are in *pari materia* and it is presumed that such acts are imbued with the same spirit and actuated by the same policy, . . . and they should be construed together as if parts of the same act, . . . to determine their affect. . . . This applies with peculiar force to statutes passed at the same session of the legislature. . . ."

So construing the three chapters, we find that the objections raised as to the classification cannot be sustained. The classification is not purely arbitrary, but rests upon a reasonable distinction, and this is sufficient for the purpose of classification. *State Board of Tax Comm.* v. *Jackson, supra.*

It is also contended that the classification makes the act invalid, because it does not apply to judgments

and/or awards for the payment of compensation under the workmen's compensation law, nor to judgments and/or allowances for support, nor judgments for alimony of less than one thousand dollars. This classification is based upon "a well-grounded consideration of public policy." The judgment or awards in compensation cases are in the place of wages so that the employee and family may live during his incapacity; the judgment for support money and alimony under one thousand dollars also comes within the same class. It was the evident purpose of the legislature in making this classification to base it upon grounds of sound public policy and classification on this ground is permitted. *Commonwealth* v. *Delaware Canal Co., supra.*

In the case of *Kersey* v. *City of Terre Haute, supra,* the court had before it the constitutionality of a vehicle ordinance of said city. The ordinance was attacked because certain vehicles were not taxed, such as street cars, automobiles, and other vehicles, similar to those of appellants, belonging to non-residents who use the streets. This ordinance was held constitutional and the court, among other things, said (p. 474):

"The power to tax is essentially legislative in its character, and it is not required, under the constitutional provisions, that there should be such an exact exclusion and inclusion of the subjects of taxation as to meet fully the approval of the judicial mind as to what is reasonable, . . . and that the power to tax, so far as constitutional objections are concerned, would seem to be in this instance untrammeled, except that invidious discrimination will not be countenanced."

We do not think the classification as made in chapter 81 of the Acts of 1933, is invidious, capricious, or arbitrary and therefore does not violate any provision of the state or federal constitution.

It is further contended that sections 31 and 32, of

chapter 81, section 9 of chapter 82, and sections 16 and 19 of chapter 83 are unconstitutional and void because of the exemption of certain intangibles from personal property taxes.

We consider this question the most serious one for our consideration and it is very forcibly presented in the brief of appellees, Thomas and Thomas. It is said in the brief that the items attempted to be exempted from general taxation by chapter 81, sections 31 and 32, chapter 82, section 9 and chapter 83, sections 16 and 19, have heretofore been, and at the date of enactment of said chapters were, completely covered by Indiana tax legislation. The legislature had actually occupied the field and included in its program, system and regulations every one of the items here involved. That the legislature, therefore, has attempted to exempt from the general property tax the items covered in these three chapters. That this violates article 10, section 1, because the items exempted do not come within any class named in the Constitution as exempted from the general property tax.

Conceding that the items exempted from general taxation had heretofore been, and at the time of the enactment of said sections, were completely covered by the Indiana tax legislation and taxed under the general property tax laws, does this fact of itself invalidate said sections? Are said sections in violation of article 10, section 1, of the Indiana State Constitution? Said section 1 of article 10, provides:

"The General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only for municipal, educational, literary, scientific, religious, or charitable purposes, as may be specifically exempted by law."

It must be remembered that this section has no application to an excise tax, and that neither the federal, nor the Indiana Constitution limits the General Assembly to any particular form of taxation, nor prevents the imposition of any form of excise tax. *State Board* v. *Jackson, supra; Crittenberger* v. *State, supra; Gafill* v. *Bracken, supra.*

In the case of *State Board of Tax Comm.* v. *Holliday, supra,* the question was presented as to whether or not life insurance policies were taxable. In speaking of the foregoing constitutional provision, the court said (p. 220):

"This constitutional provision does not confer the power of taxation, because that power being sovereign, it is inherent in the legislature. But the provision is rather a limitation upon the power to tax. It is, therefore, a legislative power to select the subjects for taxation, and this constitutional provision imposes the duty and limitations upon the legislature of providing by law *regulations* or *methods* for a just valuation of all property, both real and personal, for taxation. Where the legislature has not exercised this power, no other department of the State government can supply the omission; and where no such regulation has been prescribed by law as to any particular species of property, then such property cannot be taxed. This conclusion may rest either on the inference from such failure to prescribe such regulations that the legislature did not intend to select that particular species of property as a subject for taxation, or regardless of the legislative intent the failure to prescribe such regulation leaves such property unselected as subject for taxation."

The same principles of law are also announced in the case of *Hart* v. *Smith* (1902), 159 Ind. 182, 64 N. E. 661, where the assessment was based upon the "goodwill" of the newspaper business of appellant, and the court said (p. 184):

"The power of taxation is one of the highest attributes of sovereignty. When society erects a state, creating the three great departments of government—the legislative, executive, and the judicial,—it is not necessary to grant to the legislative department the power of taxation; for, in the absence of other restriction, that authority vests in the legislative department by virtue of the general grant of the legislative power. That article 10, section 1, of the Constitution requires all property, not especially authorized to be exempted, to be taxed, but beyond it there is room for the abundant exercise of legislative authority. The question as to the right to subject good-will to the burden of taxation is not a question of legislative power, but a question of legislative will. If it be granted that good-will is property yet it cannot be taxed unless the General Assembly has authorized it. Notwithstanding the constitutional requirement as to the taxation of property, such provision is not self-executing, and a tax cannot be laid unless the General Assembly selects the particular species of property to bear the burden of taxation."

If the General Assembly of 1935, in its wisdom, sees fit to change the plan of taxation and leaves out of the scheme of taxation the species of property heretofore covered, then under the foregoing authorities such property could not be taxed. In a sense this would amount to an exemption of such property, but such an exemption as this court has held proper. It is not done, however, on the theory of exemption, but on the theory and for the reason that it is a legislative power to select the subjects for taxation subject to the limitation of the Constitution.

In the case of *Jasnowski* v. *Board of Assessors* (1916), 191 Mich. 287, 157 N. W. 891, we find facts and contentions somewhat similar to these in the instant case. The

General Assembly of Michigan placed a privilege or excise tax upon automobiles and exempted them from all other taxes. It was contended that the legislature could not exempt such a large class of property from the ad valorem tax rolls and especially in contravention of a fixed policy of the state. The court said (p. 291):

"It is within the power of the legislature to exempt from other forms of taxation property which pays a specific tax, and this is true whether the specific tax is levied upon the property itself or upon the right to use the property in a certain way. . . . The question as to whether this tax should be in lieu of, or in addition to all other forms of taxation, was one which appealed to the discretion of the legislature. Having exercised that discretion, it is not for the courts to declare that it did not execute it wisely or unjustly."

The legislature of Mississippi imposed a privilege tax upon banks in lieu of all other taxes. The act was assailed as being violative of the Constitution. Article 12, section 16, provides:

"Taxation shall be equal and uniform throughout the state. All property shall be taxed in proportion to its value, to be ascertained as directed by law."

In the case of *Vicksburg Bank* v. *Worrell* (1889), 67 Miss. 47, 7 So. 219, in passing upon the question, the court said (p. 57):

"The legislature may select the subjects of taxation, and everything not designated as taxable is exempt for the time being. . . .

"If the legislature deems it wise to compound for all other taxes on a particular kind of business, by receiving a prescribed sum as a substitute for all taxes, it must be assumed by the courts that it was the legislative determination that the sum fixed was a proper equivalent for the taxes obtainable in a different mode, and that it was a proper exercise of legislative power. This results, necessarily,

from the legislative control over the subjects of taxation, restrained only by constitutional requirements, obligatory alike on the legislature and the courts. Where the particular arrangement of taxation provided by legislative wisdom may be accounted for on the assumption of compounding or commuting for a just equivalent, according to the determination of the legislature, in the general scheme of taxation, it will not be condemned by the courts as violative of the Constitution."

We think the history of the adoption of the act in question is a matter of common knowledge. It was known to every taxpayer and the members of the General Assembly, that the greater part of all intangibles were escaping taxation. Owners of intangibles did not give them in for taxation. They satisfied their conscience in failing to give them in to the assessor for the reason they knew that their neighbors did likewise and through the course of years it became the practice by the great majority of the owners of intangibles, to apparently forget they owned them. Prior to the enactment of the present act, it is estimated by the taxing authorities, that less than five per cent of the intangible wealth of the state was given in for taxation. This condition relative to taxation became intolerable. Owners of intangibles became perjurers in self-protection, because the rate of taxation, in many instances, exceeded the gross return on the same. It is claimed by the taxing authorities of the state that since the present act went into effect it has created a large return of taxes and has added to the tax duplicate twelve times the amount formerly listed. That one bank of Indiana alone returned $56,000,000 of cash on deposit, which approximated the total of notes and cash formerly listed by all taxpayers for the entire State of Indiana. So apparently the effect of the small excise tax upon intangibles has justified the expectations of the law-

makers, and a proper equivalent for the taxes obtained in a different mode.

The specific tax levied under the present act in lieu of all other taxes in this state has support as to its constitutionality in the enactment of other tax measures by the state and the legislative interpretation thereon. The tax act of 1919, Burns 1926, section 14032, provides that:

"All taxes for the support of the government of this state shall be assessed on polls and on property listed and valued in equal and ratable proportion, *except such stocks and other property* as may be *specifically taxed.* . . ." (Our italics.)

The same general provision has been in every tax act since 1852, and certain specific taxes were levied under said acts and as to such property no other provision was made for its taxation, and such specific tax was clearly in lieu of all other taxes.

The act of 1919, p. 198, section 14166, 1926 Burns, §64-741, Burns 1933, §15656, Baldwin's 1934, provided a specific tax in lieu of all other taxes on the tonnage of navigation companies; the act of 1919 also provided for a specific tax on foreign insurance companies. Section 14130, Burns 1926, §64-702, Burns 1933, §15616, Baldwin's 1934. This tax, in the case of *State ex rel.* v. *Continental Ins. Co.* (1917), 67 Ind. App. 536, 116 N. E. 929, was held to be a privilege tax. Under the Acts of 1881, sections 6351, 6352, 6353, 6354, and 6355, specific taxes were imposed.

We think the fact that the general tax laws since 1852, contained the provision, "Except such stock and other property as may be specifically taxed," is a legislative interpretation of its power over taxation, and while not conclusive or binding upon the court, such interpretation should be given consideration as it shows a long fixed policy.

In determining whether the legislature had the constitutional right to enact certain legislation, the legislature's interpretation of its power is entitled to great weight, and especially where acquiesced in for a long period of time. *Kelso* v. *Cook* (1916), 184 Ind. 173, 110 N. E. 987; *State* v. *Gerhardt* (1896), 145 Ind. 439, 44 N. E. 469; *McCleary* v. *Babcock* (1907), 169 Ind. 228, 82 N. E. 453.

We are of the opinion that sections 31 and 32 of chapter 81, section 9 of chapter 82, and sections 16 and 19 of chapter 83, are constitutional, and not in conflict with article 10, section 1, of the Indiana State Constitution nor any other provision of the state or federal Constitutions.

It is contended that chapter 81 of the Acts of 1933 does not expressly or by necessary implication apply or render taxable a postal saving certificate, and if construed that it does apply then the act is unconstitutional for the reason that it violates section 8 of article 1 of the Constitution of the United States, vesting in Congress the power to borrow money on the credit of the United States, and the power to establish post offices. And that it would be in violation of article 6 of the Constitution of the United States providing that said Constitution and laws made in pursuance thereof shall be the supreme law of the land.

We are clearly of the opinion that the act applies to such intangibles and we are not impressed with the constitutional objections raised. Section 1 (a) of the act is certainly broad enough to apply to such certificates. We cannot see in what manner or in what way the act would effect the power to borrow money on the credit of the United States. Neither can we see how it would effect the establishing of post offices or impose a bur-

den upon the exercise of the power to establish post offices.

Title 39, section 758, The Postal Service, U. S. C. A., provides that postal saving deposits may be withdrawn upon demand. These deposits, as we construe the act, do not in the strict sense amount to a loan to the United States Government, and therefore the power to borrow money on the credit of the United States is not in any way interfered with or involved. In speaking of the power to tax, the Supreme Court of the United States, in the case of the *First Nat'l. Bank* v. *Commonwealth* (1869), 9 Wall. 353, said (p. 362):

> "That limitation (upon the power to tax) is, that the agencies of the Federal government are only exempted from state legislation, so far as that legislation may interfere with, or impair, their efficiency in performing the functions by which they are designed to serve that government."

It cannot be successfully maintained that the tax in question interferes with or impairs the efficiency of the government service nor in the slightest degree diminishes the power of the government to borrow money.

It is further contended that chapters 81, 82, and 83, of the Acts of 1933, are in violation of section 22, article 4, of the Constitution of the State of Indiana. Section 22 provides that:

> "The General Assembly shall not pass local or special laws in any of the following enumerated cases, that is to say: . . . For the assessment and collection of taxes for State, County, Township or road purposes."

These acts clearly do not fall within this constitutional inhibition. They are not local or special laws. As said in the case of *Saraceno* v. *State* (1931), 202 Ind. 663, 666, 177 N. E. 436:

> "A law is not local and special if it applies to all who come within its provisions generally and

without exception, rests upon an inherent and substantial basis of classification, and its operation is the same in all parts of the state under the same circumstances and conditions."

And in the case of *Gilson et al.* v. *The Board of Comm.* (1890), 128 Ind. 65, 27 N. E. 235, the court used the following language (p. 69):

"It is held that a statute which is of general and uniform operation throughout the state, and operates alike upon all persons, under the same circumstances, is not subject to the objection that it is special or local legislation. *State ex rel.* v. *Reitz,* 62 Ind. 159; . . . *Heanley* v. *State,* 74 Ind. 99; *Elder* v. *State,* 96 Ind. 162."

The acts in question are of uniform operation throughout the State of Indiana, and apply alike to all persons coming within their operation, and is not in conflict with the provisions of section 22, article 4, of the state Constitution.

It is also contended that the acts in question ▮ violate section 23, of article 1 of the Constitution of Indiana. Section 23 provides that:

"The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

And further that it violates section 1 of the 14th Amendment of the Constitution of the United States, which provides:

". . . No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; . . . nor deny to any person within its jurisdiction the equal protection of the law."

"Article 1, section 23, of the Constitution of this State is the antithesis of the 14th amendment to the federal Constitution, for while the latter operates to prevent abridgment by the states of constitutional rights of citizens of the United States, the former prevents the State from granting privi-

leges or immunities—that is, exemptions from otherwise common burdens—or advantages to any citizens or class of citizens which, upon the same terms—that is under like circumstances and conditions—shall not equally belong to all citizens. One section prevents the curtailment of the constitutional rights of citizens, and the other prohibits the enlargement of the rights of some in discrimination against others; but so long as all are treated alike, under like circumstances, neither section is violated." *Hammer* v. *State* (1909), 173 Ind. 199, 89 N. E. 850; see *State Board of Tax Comm.* v. *Jackson, supra.*

Speaking of the clause in section 1 of the 14th Amendment, the Supreme Court of the United States, in the case of *Magoun* v. *Illinois Trust and Savings Bank* (1898), 170 U. S. 283, 18 Sup. Ct. 594, said (p. 293):

"The clause of the 14th Amendment especially invoked is that which prohibits a state denying to any citizen the equal protection of the laws. What satisfies this equality has not been and probably never can be precisely defined. Generally it has been said that it 'only requires the same means and methods to be applied impartially to all the constituents of a class so that the law shall operate equally and uniformly upon all persons in similar circumstances.' . . . It does not prohibit legislation which is limited, either in the objects to which it is directed or by the territory within which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike under like circumstances and conditions, both in the privilege conferred and the liabilities imposed."

And, speaking of the 14th Amendment, the court in the case of *Bells Gap R. R. Co.* v. *Penn., supra,* said (p. 237):

"The provision in the 14th Amendment, that no State shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways.

It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries and property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. . . . We think we are safe in saying, that the 14th Amendment was not intended to compel the State to adopt an iron rule of equal taxation."

And again in the case of *Giozza* v. *Tiernan* (1893), 148 U. S. 657, 662, 13 Sup. Ct. 721, the court said:

"Nor, in respect of taxation was the amendment intended to compel the State to adopt an iron rule of equality; to prevent the classification of property for taxation at different rates; or to prohibit legislation in that regard, special either in the extent to which it operates or the objects sought to be obtained by it. It is enough that there is no discrimination in favor of one as against another of the same class." See also *Pacific Express Co.* v. *Seibert* (1892), 142 U. S. 339, 12 Sup. Ct. 250.

We do not think the acts in question violate section 23 of article 1 of the State Constitution, nor the 14th Amendment to the United States Constitution. Nor do we believe the acts or any sections thereof violate any provisions of the state or federal Constitution.

In cause No. 26,406, the judgment is reversed; and in causes 26, 343 and 26,352, the judgment in each case is affirmed.

Treanor, C. J., concurs.

Roll, J., and Fansler, C. J., dissent.

### CONCURRING OPINION.

TREANOR, C. J.—I concur in the original holding and in the present action of the court in overruling the petition for a rehearing. At the time the decision was ren-

dered I entertained some doubt as to whether the taxes imposed by the legislative acts involved in this suit are excise or property taxes. But after more mature consideration I am convinced that they are excise taxes. Assuming that to be true it is urged that the sections of chapters 81, 82 and 83 of the Acts of 1933, which purport to relieve the intangibles from a property tax violate §1, Art. X of our Constitution granting an exemption from property taxes on intangible personal property which is not used "for municipal, educational, literary, scientific, religious, or charitable purposes."

This court has recognized the definitely restrictive force of the non-exemption provision of §1, Art. X; and in the recent case of *Stark* v. *Kreyling* (1934), 207 Ind. 128, 188 N. E. 680, it was held that the General Assembly cannot authorize exemptions of property from taxation unless the particular property is actually devoted to "municipal, educational, literary, scientific, religious, or charitable purposes." But the problem presented by the contention that certain sections of the tax acts of 1933 violate Art. X of the Constitution is whether the inhibition against tax exemptions encompasses and destroys the sovereign power of the General Assembly to select and classify the subjects of taxation.

It is elementary that the General Assembly's power to select subjects of taxation is unlimited, except insofar as such power is restricted by some provision of the Constitution; and Art. X contains no provision which expressly requires the General Assembly to select all classes of real and personal property of the state as subjects of taxation.

Consequently we can reach the conclusion that Art. X mandates the General Assembly to subject all real and personal property to a property tax only by drawing an inference to that effect from the provision limiting the

power of the General Assembly in setting up the machinery for "assessment and taxation" and from the provision which limits the legislative power to exempt to "only such property" as is devoted to "municipal, educational, literary, scientific, religious, or charitable purposes."

The case of *State Board of Tax Commissioners* v. *Holliday* (1898), 150 Ind. 216, 49 N. E. 14, is of special significance in considering the extent of the legislative power over taxation. In that case the question was whether taxing officials could assess insurance policies as personal property. It was admitted that "a policy of insurance is a chose in action governed by the same principles applicable to other agreements involving pecuniary obligations" (*Hutson* v. *Merrifield* [1875], 51 Ind. 24, 29) and there was no contention that the General Assembly did not have the power to include such policies within the general class of personal property for purposes of taxation. But appellees' position on appeal was as follows:

"1st. That assuming that such policies are personal property of such a nature as to fall within the literal terms of the tax law above quoted, yet that the legislature has provided no regulations for the valuation of such policies; and in the absence of such regulations the State Board of Tax Commissioners cannot, as appellees contend, usurp the functions of the legislature, and discharge the duties enjoined upon it by the Constitution to 'prescribe such regulations as shall secure a just valuation of all property.' 2nd. That the legislature did not intend to include life insurance policies in the language above quoted, 'all property within this State' or the words 'all other goods, chattels and personal property,' or in section 53, providing the form of the schedule, by the words 'credits,' 'demands and claims.' "

The appellant contended that life insurance policies

being "personal property within the meaning of the tax law of 1891 and the Constitution" it was the duty of the taxing officials to list and value them for taxation. This court stated its conclusions as follows:

"We therefore conclude that the legislature did not intend to make life insurance policies subjects of taxation, and failing to provide any regulations for, or manner of assessing or valuing such policies for taxation, if they do fall within the literal words of the tax law of 1891, we hold that the act of the State Board of Tax Commissioners, in providing regulations for, and ordering them to be assessed for taxation was without authority of law and void."

Parties to this appeal who urge the unconstitutionality of the sections which relieve intangibles from a property tax, point out that in the Holliday case insurance policies had never been selected as subjects of taxation, or, if they had, the General Assembly had not provided any rule for assessing and valuing them for taxation; while in the instant case previously enacted statutes had selected intangibles for taxation and had provided rules for assessing and valuing them. If the foregoing distinctions have legal significance it is because (1) the General Assembly has no power to withdraw from the subjects of taxation any class of property which has once been subject to taxation; and (2) any such withdrawal constitutes an exemption.

The brief of the State Board of Tax Commissioners in opposition to the petition for a rehearing urges that the foregoing contention is unsound for two reasons: "First it is based upon the false premise that all property by virtue of the constitutional provision is subject to taxation unless specially exempted by law, whereas no property is subject to taxation until made so by legislative enactment. Second, it is based upon a gross misconception of the character of an exemption." We

quote the following from the brief in support of the second proposition:

"The claim that such construction *does* nullify the exemption provision, *supra,* is based upon a gross misconception of the character of an exemption. An exemption takes property which is *in the taxable class* and removes it from taxation upon some designated ground of ownership or use. An educational institution may own for the purposes of education, real estate, tangible personal property and intangible personal property. Assume that the legislature has selected all of the above classes of property for taxation. They thereby become taxable unless exempted, which under the Constitution the legislature may do, but, having selected all classes for taxation, the legislature cannot exempt a manufacturing establishment which possesses all three classes. On the other hand, the legislature may withdraw intangible personal property from taxation, and as a result thereof both the educational institution and the manufacturing establishment will be relieved from paying tax on such intangible personal property but not on the principle of an exemption, but because the same is not in the taxable class. Exemption as permitted by section 1 of article 10 of the Constitution is a discrimination *within* a taxable class on the basis of municipal, educational, literary, scientific, religious or charitable purpose. Selection, on the contrary, is the *determination* of the taxable class, and unless impressed with such arbitrary methods of classification as violate the equal privileges and immunities provision of the Constitution, it is valid. When the class has been determined and subjected to the tax by the legislature—and no property is taxable unless so selected by the legislature—any exemptions must be such only as are authorized by the Constitution. If the class is withdrawn from property taxation, as is the case under consideration, there is nothing upon which the exemption limitation of the Constitution can operate. The acts under consideration, therefore, do not violate the above exemption limitations."

In the opinion of the writer the foregoing is sound.

It is clear that the exemptions contemplated in §1 of Art. X are exemptions of property on the basis of use and not on the basis of the nature or character of the property, and presuppose that the particular items of property which are exempted belong to a class of property which has been subjected to taxation by the General Assembly in an exercise of its power to select the subjects of taxation. Consequently we come back to the question of the power of the General Assembly to classify property for the purpose of selecting subjects for taxation. And more particularly, to the question of whether the provisions of §1, Art. X, deprive the General Assembly of the power to reclassify personal property into tangibles and intangibles for the purpose of withdrawing intangibles from the classes of property subject to a property tax.

The actual holding of this court on the facts in the Holliday case (*supra,* p. 515) is not determinative of the foregoing question. But the principles announced and the reasoning therefrom appear to support the conclusion that the General Assembly had the power to withdraw intangibles from the general class of property taxables. "The power of taxation is a sovereign power and belongs exclusively to the legislative department of the government. The power of the legislature over the subject of taxation admits no limitation except where specially imposed by the Constitution itself." (*State Board, etc.,* v. *Holliday, supra.*) In applying the foregoing principle to the construction of §1, Art. X,[1] this court spoke as follows:

---

Note 1. "The General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only for municipal, educational, literary, scientific, religious, or charitable purposes, as may be specially exempted by law." §1, Art. X, Indiana Constitution.

"This constitutional provision does not confer the power of taxation, because that power being sovereign, it is inherent in the legislature. But the provision is rather a limitation upon the power to tax. It is, therefore, a legislative power to select the subjects for taxation, and this constitutional provision imposes the duty and limitation upon the legislature of providing by law *regulations* or *methods* for a just valuation of all property, both real and personal, for taxation. Where the legislature has not exercised this power, no other department of the state government can supply the omission; and where no such regulation has been prescribed by law as to any particular species of property, then such property cannot be taxed. This conclusion may rest either on the inference from such failure to prescribe such regulations that the legislature did not intend to select that particular species of property as a subject for taxation, or regardless of the legislative intent the failure to prescribe such regulations leaves such property unselected as a subject for taxation."

It is evident that this court thought the limiting provisions of §1, Art. X, left unimpaired the *sovereign* and *inherent* legislative "power to select the subjects for taxation"; and that the limitations on "the power to tax" related only to the kind of taxing system which Art. X made it the duty of the General Assembly to provide. This must be correct unless the restrictive provisions which are expressly directed to the mechanics of the taxing system necessarily imply a restriction on the substantive power to select the subjects for taxation. The requirement that the General Assembly "shall provide, by law, for a uniform and equal rate of assessment and taxation" cannot be the source of an implied restriction of the legislative power to select subjects of taxation; and the clause "prescribe such regulations as shall secure a just valuation of all property, both real and personal," cannot be said reasonably to constitute a constitutional mandate to the General Assembly to

select all property, both real and personal, as subjects of taxation. It seems more reasonable to assume that it is a mandate to prescribe regulations to secure a just valuation for taxation of all property which is subject to taxation. And since §1, Art. X, does not purport to select subjects for taxation it follows that the power of the General Assembly in that respect is full, unimpaired and continuing.

If the foregoing is sound then the General Assembly of 1933 did not violate §1, Art. X, of the Constitution when it, in effect, reclassified personal property into tangibles and intangibles for the purpose of withdrawing intangibles from property taxables. Furthermore, in the opinion of the writer, there is, for purposes of taxation, such a substantial difference between intangible and tangible personal property that the classification does not violate the constitutional prohibition against the granting of special privileges and immunities. (§23, Art. I, Indiana Constitution.)

In explanation of my original concurrence despite my then doubts about the nature of the intangible tax, I should state that I believe that intangibles can be treated as a separate class of personal property for the purpose of imposing a lower rate per centum than is imposed upon other personal property. In my opinion the appeal brief of the State Board of Tax Commissioners clearly establishes that "rate," as used in section 1, article X, was intended to mean and, reasonably construed, must mean "mode" or "rule" or "method," and not rate per centum of tax; and that the "equal and uniform rate" restriction does not prevent classification for the purpose of imposing different percentages of tax. The rate per centum of tax is merely one element of the equal and uniform method of assessment and taxation. Consequently I believe that the intangible tax provisions

would not violate section 1, article X, even if it were necessary to hold that the tax is a property tax. But since I am convinced that it is an excise tax I concur with that holding as well as in the general result reached in the opinion of Hughes, J.

## DISSENTING OPINION.

FANSLER, C. J., ROLL, J.—The importance of the constitutional questions involved compel us to give our reasons for dissenting from the majority.

That the power of taxation is inherent in the legislature, that subjects may be selected and classified for the purpose of taxation, and that persons and property may be exempted from taxation, in the absence of constitutional limitations, is well settled. And in this state it is well settled that in respect to excise taxes, that is taxes other than those levied upon property, the legislature has power to select subjects for taxation and to exempt others. The majority opinion holds that the law here in question levies an excise tax. Whether the weight of authority sustains this view may well be doubted. See *Miles et al.* v. *Department of Treasury of the State of Indiana et al.* (1935), (Ind.) 193 N. E. 855. But, as we view it, the law is unconstitutional without regard to whether it be treated as an excise or a tax upon property.

An excise is a tax levied upon callings, occupations, or privileges, and thus is assessed against the individual and not against property, or against the individual on account of his ownership of property. *Miles et al.* v. *Department of Treasury of the State of Indiana et al., supra.*

And if the tax in question be an excise it is clearly not a tax upon the tangible property referred to in the act. Section 31 of the act provides, in effect, that intangible property shall be exempted from the regular

ad valorem tax with which it has been heretofore burdened, and with which all property has been burdened. Article 10, section 1, of the Constitution of Indiana provides:

"The General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only for municipal, educational, literary, scientific, religious, or charitable purposes, as may be specially exempted by law."

It is not claimed that the intangibles sought to be exempted are "for municipal, educational, literary, scientific, religious, or charitable purposes," and it is universally recognized that the legislature may not exempt any other classes of property from taxation. This was recognized in *State Board of Tax Commrs.* v. *Holliday, supra,* although it was held in that case that, while the legislature might not expressly exempt life insurance policies from taxation, since they are property, the failure of the legislature to provide machinery for levying and collecting a tax, had the practical effect of leaving them unburdened by a property tax. The soundness of the reasoning supporting this view has been questioned for the reasons set out at length in the opinion of Howard, C. J., who dissented, which dissenting opinion was concurred in by Monks, J. But in this case we have not the state of facts that confronted the court in the Holliday case, for, in respect to intangible property, there is now, and always has been, a method provided by statute for its assessment, and we are firmly of the opinion that the rule laid down by the majority in that case should not be extended to permit the legislature to exempt any class of property which it may choose to exempt merely by repealing the law which provides machinery for levying an assess-

ment upon such property. We quote from the dissenting opinion in the case referred to (p. 241):

> "But, if the legislature could not, by positive enactment, exempt from taxation any property except that explicity provided for in the Constitution, can it be said that it could accomplish this end by simply failing to make any enactment on the subject? Can the legislature do by indirection what it could not do directly? Can it do by silence what it could not do by speaking? It would be strange, indeed, if that were possible."

Such a rule would have the effect of making the constitutional provision absolutely nugatory, and permitting the legislature to except from taxation not only property for the purposes set out in the Constitution, but any other class of property which the legislature itself might deem it wise or expedient to exempt. It is true also that in the case of *State ex rel. Lewis* v. *Smith* (1902), 158 Ind. 543, 63 N. E. 25, 214, it was held that the mortgage exemption statute was constitutional, two of the justices dissenting, however. The majority seemed to rely to some extent upon the case of *State Board of Tax Commrs.* v. *Holliday, supra,* but in the main based their conclusion upon the theory that one who mortgages property alienates a portion of it, and that to value property with a deduction for a mortgage is merely to arrive at a net value, and that the Constitution does not require that property be assessed at its gross value. This latter theory has been accepted in the past as justifying the deduction of debts from credits and assessment upon the net value. But these cases do not go far enough to justify, nor should they be extended so as to justify, the legislature in wholly exempting a class of property which is recognized as taxable property from the burden of taxation as such. And in our view it follows that if the tax provided for is an excise, a mere tax upon persons, because of certain privi-

leges, it is not a burden upon intangible property at all, and hence the act is unconstitutional, since it leaves one recognized class of property exempt from the burden of taxation. It might be said that, if the tax is treated as an excise, only the exemption feature need be held unconstitutional, and thus intangible property would still be subject to the regular ad valorem tax which was levied upon it before, and subject to the excise tax provided for in the act, in addition to other taxes. But it is perfectly clear that this was not the legislative purpose or intention, since the act provides that the tax shall be in lieu of all other taxes except certain excises.

If the measure is to be considered a property tax, and not an excise, it must fall. The effect of the act is to provide that intangibles shall be assessed for taxation at their fair cash value, the same as any other property, but that they shall be taxed by a different rule and rate than any other property. That is to say, they shall pay twenty-five cents upon each $100.00 of cash value for all purposes, and regardless of the rate levied against other property for the same period. The case of *Board of Commrs., etc.* v. *Johnson* (1909), 173 Ind. 76, 89 N. E. 590, is relied upon as sustaining the view that this can be done, but in that case it is held merely that property may be classified, and different methods applied to different classes for the purpose of determining its value; that is to say, for the purpose of assessing it, but it is said in that case that the Constitution "does require a rate that is uniform and equal." The question has been discussed many times by this court, and no case has been called to our attention, nor do we find one, in which it is suggested that the legislature has power under the Constitution to tax different classes of property at different rates.

And, when the entire act is considered, it is too plain

for argument that its entire purpose is merely to tax intangible property at a lower rate than tangible property. This, we are convinced, the Constitution forbids.

It may be true, as suggested in the majority opinion, that in the past the owners of intangible property have evaded the law and have falsified their tax returns and, by ingenious devices, escaped the burden which the law put upon their property; that, in defiance of the law, they refused to submit to having their property taxed at the same rate as other property, and that the legislature, recognizing this fact and feeling itself impotent to enforce the tax provided for, compromised and, in fact, consented to confer a partial exemption upon this class of property, and to accept what the owners of such property would consent to pay, and leave whatever burden remained to be carried by other property and other taxes. But this is abdication. This is surrendering the legislative prerogative to the dictation of the owners of a class of property. This is ignoring the mandate of the Constitution as it has always been interpreted, that the legislature shall not tax one class of property at one rate and another class at a lesser rate. It will be noted further that the tax to be collected under the act goes to the state and county general fund and to the school fund of cities and townships. Thus the property in question is exempted from any contribution whatever to the maintenance of civil city or civil township government. The act has the following provisions:

"Sec. 2. On and after the passage of this act, every person residing in and/or domiciled in this state, shall pay a tax to the State of Indiana at the rate and in the manner provided in this act, for the right to exercise any one or more of the following privileges:

"(a) Signing, executing and issuing intangibles.

"(b) Selling, assigning, transferring, renewing,

removing, consigning, mailing, shipping, trading in and enforcing intangibles.

"(c) Receiving the income, increase, issues and profits of intangibles.

"(d) Having and possessing the right to transmit the same by will and of making gifts thereof and therefrom and of having the right to allow such property to pass to other persons by descent under the intestate laws of the State of Indiana.

"(e) For the right to have such intangibles separately classified for taxes levied, assessed and collected on account thereof and/or measured thereby."

"Sec. 3. A tax hereby is imposed by this act and shall be (a) five cents on each twenty dollars or fractional part thereof, of the actual value of every current intangible; and (b) five cents per annum or fractional part thereof over one year on each twenty dollars of the actual value or fractional part thereof of each annual intangible."

Whether the act intends to provide a tax upon the actual value of the intangibles themselves, as provided in section 3, or upon the right to exercise the privilege of signing notes or other intangibles, is not clear. Nor is it clear whether, by section 2, it is intended that the right to exercise the privilege of signing notes is to be taxed without regard to whether notes are actually signed, or whether the tax is to be imposed upon exercising the privilege, and to the extent to which it is exercised. By another provision of the act, one who holds an intangible over a period of years is required to pay a tax each year for the privilege of selling or assigning it, notwithstanding he has not exercised the privilege. These provisions of the act are so obscure that it is impossible to determine exactly to what privileges and to what intangibles the act is intended to apply. And, since administrative officers and courts have no power to legislate, but may carry out an express legislative intention only, we believe the act should be held void for uncertainty.

It is, therefore, our view that, whether viewed as an excise tax or a property tax enactment, the statute is unconstitutional.